Karim Z. Oussayef (*pro hac vice* pending)
Robert C. Harrits (*pro hac vice* pending)
Desmarais LLP
230 Park Avenue
New York, New York 10169
(212) 351-3427
koussayef@desmaraisllp.com
rharrits@desmaraisllp.com

Eric M. Fraser, No. 027241
Osborn Maledon, P.A.
2929 N. Central Avenue, Suite 2100
Phoenix, Arizona 85012-2793
(602) 640-9000
efraser@omlaw.com

Attorneys for Plaintiff
International Business Machines Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| International Business Machines Corporation, a New York corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Expedia, Inc., a Washington corporation; Hotels.com, L.P., a Texas limited partnership; Hotwire, Inc., a Delaware corporation; and Orbitz, LLC, a Delaware limited liability company,<br><br>Defendants. | No.<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff International Business Machines Corporation ("IBM"), for its Complaint for Patent Infringement against Expedia, Inc., Hotels.com L.P., Hotwire, Inc., and Orbitz, LLC (collectively "Defendants"), alleges as follows:

## INTRODUCTION

1.    IBM is a world leader in technology and innovation.  IBM spends billions of dollars each year on research and development, and those efforts have resulted in the issuance of more than 110,000 patents worldwide.  Patents enjoy the same fundamental

protections as real property.  IBM, like any property owner, is entitled to insist that others respect its property and to demand payment from those who take it for their own use. Defendants have built their business model on the use of IBM's patents.  Moreover, despite IBM's repeated attempts to reach a business resolution, Defendants refuse to negotiate a license to IBM's patent portfolio.  This lawsuit seeks to stop Defendants from continuing to use IBM's intellectual property without authorization.

## NATURE OF THE CASE

2.    This action arises under 35 U.S.C. § 271 for Defendants' infringement of IBM's United States Patent Nos. RE41,440 (the "'440 patent"), 6,778,193 (the "'193 patent"), and 7,543,234 (the "'234 patent") (collectively the "Patents-In-Suit").

## THE PARTIES

3.    Plaintiff IBM is a New York corporation, with its principal place of business at 1 New Orchard Road, Armonk, New York 10504.

4.    Defendant Expedia, Inc. is a Washington corporation ("Expedia") with a principal place of business at 333 108th Avenue NE, Bellevue, Washington 98004. Expedia may be served through its registered agent for service, National Registered Agents, Inc., 3800 N Central Ave Suite 460, Phoenix, Arizona 85012.  Expedia provides online travel reservation and related services to consumers and local partners directly through the websites at www.expedia.com and through the Expedia mobile applications.

5.    Expedia also provides online travel reservation and related services to consumers through its subsidiaries: Hotels.com L.P., Hotwire, Inc., and Orbitz, LLC (collectively, the "Expedia Subsidiaries").  Hotels.com L.P., Hotwire, Inc., and Orbitz, LLC are wholly-owned and controlled subsidiaries of Expedia.

6.    Expedia and the Expedia Subsidiaries belong to a corporate family that is comprised of affiliated companies that offer travel-related services in this District. Expedia Group, Inc. ("Expedia Group") is the parent corporation of Expedia and owns Defendants Hotels.com L.P., Hotwire, Inc., Orbitz Worldwide LLC, Orbitz Worldwide, Inc., and Orbitz, LLC through its ownership and control of Expedia.  Expedia Group is a

Delaware corporation with a principal place of business at 333 108th Avenue NE, Bellevue, Washington 98004.

7.    According to Expedia Group's 10-K, Brand Expedia® is one of Expedia Group's "travel brands."[1]   Expedia's "technology platforms" support several of the Expedia Group's brands, including expedia.com, travelocity.com, and orbitz.com.[2]

8.    Expedia operates the website located at http://www.travelocity.com. Travelocity is one of Expedia Group's "travel brands."[3]   Expedia's "technology platforms" support several of the Expedia Group's brands, including Travelocity.[4] Expedia provides online travel reservation and related services to consumers and local partners directly through the websites at www.travelocity.com and through the Travelocity mobile applications.

9.    Defendant Hotels.com L.P. is a Texas limited partnership ("Hotels.com") with a principal place of business at 5400 Lyndon B Johnson Freeway #500, Dallas, Texas, 75240.  Hotels.com may be served through its registered agent for service, National Registered Agents, Inc., 1999 Bryan Street, Suite 900, Dallas, Texas 75201.  Hotels.com operates the website located at http://www.hotels.com and the Hotels.com mobile applications.  Hotels.com provides online hotel reservation and related services to consumers and local partners through the website www.hotels.com and through the Hotels.com mobile applications.  Hotels.com is a wholly-owned subsidiary of Expedia.

10.  Hotels.com is one of Expedia Group's "travel brands."[5]   The Hotels.com technology platform supports [Expedia Group's] hotel-only offering, including Hotels.com . . . ."[6]

11.  Defendant Hotwire, Inc. is a Delaware corporation ("Hotwire") with a principal place of business at 655 Montgomery Street Suite 600, San Francisco, California

---

[1]    Expedia Group's 2018 Form 10-K at 1, *available at* https://ir.expediagroup.com/sec-filings/sec-filing/10-k/0001324424-19-000006.
[2] *Id.* at 7.
[3] *Id.* at 1.
[4] *Id.* at 7.
[5] *Id.* at 1, 3.
[6] *Id.* at 7.

1   94111.  Hotwire may be served through its registered agent for service, National

2   Registered Agents, Inc., 3800 N Central Ave Suite 460, Phoenix, Arizona 85012.  Hotwire

3   provides online travel reservation and related services to consumers and local partners

4   through the website www.hotwire.com and through its Hotwire mobile applications.

5   Hotwire is a wholly-owned subsidiary of Expedia.

6   12.  Hotwire is one of Expedia Group's "travel brands."[7]  "The Brand Expedia

7   technology platform supports [Expedia Group's] full-service and multi-product brands,

8   including . . . certain parts of the Hotwire brand."[8]

9   13.  Defendant Orbitz, LLC is a Delaware limited liability company ("Orbitz")

10  with a principal place of business at 500 W Madison Street, Suite 1000, Chicago, Illinois

11  60661.  Orbitz, LLC may be served through its registered agent for service, National

12  Registered Agents, Inc., 208 S. LaSalle Street, Suite 814, Chicago, IL 60604.  Orbitz, LLC

13  provides online travel reservation and related services to consumers and local partners

14  through the website www.orbitz.com and through the Orbitz mobile applications.  Orbitz,

15  LLC is a wholly-owned subsidiary of Expedia.[9]

16  14.  Orbitz is one of Expedia Group's "travel brands."[10]  Expedia's "technology

17  platforms" support several of the Expedia Group's brands, including Orbitz.[11]

18  15.  According to Expedia, its servers related to expedia.com and the associated

19  mobile applications are located in Chandler, AZ, along with the servers for the websites

20  and mobile applications operated by Hotels.com, Orbitz, and Hotwire.[12]

21

---

22  [7] *Id.* at 1.
    [8] *Id.* at 7.

23  [9] Orbitz, LLC is wholly-owned by Orbitz Inc. (a Delaware corporation), which is

24  wholly-owned by Orbitz Worldwide, LLC (a Delaware corporation), which is wholly-owned by Orbitz Worldwide, Inc. (a Delaware corporation), which is wholly-owned by

25  Expedia.  *See* Declaration of Michael Marron In Support of Defendants' Motion To Dismiss Under Rule 12(b)(3) and Rule 12(b)(6) ¶ 5, *Int'l Business Machines Corp. v. Expedia, Inc.*, Case No. 1:17-cv-01875-LPS-CJB (D. Del. May 29, 2018) (D.I. 25).

26  [10] Expedia Group's 2018 Form 10-K at 1.

    [11] *Id.* at 7.

27  [12] *See* Declaration of Michael Marron In Support of Defendants' Motion To

28  Dismiss Under Rule 12(b)(3) and Rule 12(b)(6) ¶¶ 8, 10, 13, 14, *Int'l Business Machines Corp. v. Expedia, Inc.*, Case No. 1:17-cv-01875-LPS-CJB (D. Del. May 29, 2018) (D.I. 25).

**FACTUAL BACKGROUND**

**A.    IBM Is A Recognized Innovator.**

16.  IBM is recognized throughout the world as a pioneer in many aspects of science and technology.  On eight occasions, more times than any other company or organization, IBM has been awarded the U.S. National Medal of Technology, the nation's highest award for technological innovation.  During IBM's over-100-year history, IBM's employees have included six Nobel laureates, six Turing awards, five National Medal of Science recipients, and at least fourteen inventors in the National Inventors Hall of Fame.

17.  These and other IBM employees have introduced the world to technology that the global community takes for granted today, including the dynamic random access memory—DRAMs—found in nearly all modern computers; magnetic disk storage—hard disk drives—found in computers and portable music players; and some of the world's most powerful supercomputers, including Deep Blue, the first computer to beat a reigning chess champion and which is on display at the Smithsonian's National Museum of American History in Washington, D.C.  IBM's commitment to developing these types of advanced computing technologies has helped to usher in the information age.

**B.    IBM Is Committed To Protecting Its Innovations Through The Patent System.**

18.  IBM's research and development operations differentiate IBM from many other companies.  IBM annually spends billions of dollars on research and development, yielding inventions that have literally changed the way the world works.  For over two decades the United States Patent and Trademark Office ("USPTO") has issued more patents to IBM than to any other company in the world.

19.  Like the research upon which the patents are based, IBM's patents also benefit society.  Indeed, the Supreme Court has recognized that the patent system encourages both the creation and the disclosure of new and useful advances in technology.  Such disclosure, in turn, permits society to innovate further.  And, as the Court has further recognized, as a reward for committing resources to innovation and for disclosing that innovation, the

patent system provides patent owners with the exclusive right to prevent others from practicing the claimed invention for a limited period of time.

**C.  IBM Routinely Licenses Its Patents In Many Fields But Will Enforce Its Rights Against Those Who Use Its Intellectual Property Unlawfully.**

20.  IBM's commitment to creating a large patent portfolio underscores the value that IBM places in the exchange of innovation, and disclosure of that innovation, in return for limited exclusivity.  Indeed, IBM has used its patent portfolio to generate revenue and other significant value for the company by executing patent cross-license agreements.  The revenue generated through patent licensing enables IBM to continue to commit resources to innovation.  Cross licensing, in turn, provides IBM with the freedom to innovate and operate in a manner that respects the technology of others.

21.  Given the investment IBM makes in the development of new technologies and the management of its patent portfolio, IBM and its shareholders expect companies to act responsibly with respect to IBM's patents.  IBM facilitates this by routinely licensing its patents in many fields and by working with companies that wish to use IBM's technology in those fields in which IBM grants licenses.  When a company appropriates IBM's intellectual property but refuses to negotiate a license, IBM has no choice but to seek judicial assistance.

**D.  IBM Invented Methods For Obtaining Enriched Web Server Activity Data Of Cached Web Content.**

22.  The inventors of the '440 patent developed the patented technology as part of IBM's efforts to allow tracking of critical performance data related to information access requests to a web site server.  At the time of the invention of the '440 patent, data networks were struggling under the weight of soaring bandwidth demand due to the explosive growth in users seeking web access.  One way in which engineers sought to address this challenge was by implementing web caching, which is the process of maintaining frequently accessed web content locally in a location close to the requester, so that redundant user requests for web content do not require sending the individual requests and

returned content over the wide area network.  However, web caching can result in significant downsides to web content publishers, including an inability to accurately track web traffic as a result of visitors accessing web content from caching servers, as well as users receiving outdated or stale content from infrequently or slowly-updated caching servers.

23.  In light of the above considerations, the inventors of the '440 patent developed novel systems and methods for gathering enriched web server activity data for purposes of tracking critical performance data.  In particular, the inventors of the '440 patent disclose and claim the use of an enriched request to the origin server, which may be a small image request such as a request for a single pixel clear Graphic Interchange Format ("GIF"), as a "surrogate" for the complete set of web log records.  The small image is non-cacheable, ensuring that the origin server will receive the enriched request even if the requested page, or portions of the page, are retrieved from one or more caches not located at the origin server.  Accordingly, the '440 patent allows web providers to track critical performance data, while utilizing web caching to simultaneously benefit from faster and more efficient decentralized delivery networks, avoiding the tradeoff required in the prior art between faster rendering of web pages and control over data tracking.

**E.  IBM Invented Methods of Improving Contextual Searching Using Visual Workspaces.**

24.  The inventors of the '193 patent developed the patented technology as part of IBM's efforts to improve graphical user interfaces ("GUIs") for customer self-service search and retrieval systems.  Customer search and retrieval systems may include knowledge management systems, information portals, search engines, and data miners. Providing efficient and satisfactory search results using such systems requires that users provide relevant contextual information in conjunction with a search query.  At the time of the invention, engineers attempted to solve this problem through the use of GUIs, which represented available applications and data sets via icons.  However, these prior art GUIs failed to address the full range of relevant contextual variables for user queries, and also

did not provide a graphical method for fine tuning the relevant context variables.

25.  The inventors of the '193 patent thus recognized a need to provide an improved GUI for customer search and retrieval functions capable of facilitating the efficient location of relevant resources in response to a query by enabling the expression of a user's context as part of the query and indicating the relevance of returned results in that context. The inventors of the '193 patent developed systems and methods of using user context attributes and graphical user interfaces to allow users to search for content and subsequently narrow the results based on user context to obtain increased specificity and accuracy in search results.  The patented technology of the '193 patent provides for more efficient search and retrieval in part through a novel iconic graphical user interface that enables the expression of a user's context as part of the user query, which has the benefit of minimizing user time and resource intensive system processes.

**F.    IBM Invented Methods Of Stacking Portlets In Portal Pages.**

26.  The inventors of the '234 patent developed the patented technology as part of IBM's efforts to improve customizable portal pages.  Unlike traditional off-line media, portal pages allow for the display of dynamically updated information aggregated from different sources on computer screens, tablets, mobile devices, and other media, based on user preferences.  A portal page may be comprised of individual portlets, which access hardware and software to gather data and offer information to portal pages.  Portals and portlets can be associated with preferences selected by the user and thus can provide an effective mechanism to view information of interest from a variety of sources at the same time.  However, as the number of portlets increase, portal pages can become overcrowded and disorganized.  In the prior art, overcrowding often resulted in cluttered portal pages that would inhibit the user from effectively viewing and interacting with all of the available portlets.  That problem was unique to computer systems, because unlike traditional media, such as newspapers, magazines, and books, portals and portlets are not limited to predetermined content, limited information sources, or static areas of display.

27. The  inventors  of  the  '234  patent  recognized  a  need  to  improve  the

8

customization of portal pages. They developed a novel approach for organizing and displaying stackable portlets on a portal page, which includes determining whether a subset of portlets is stackable and providing a control means for the user to select between subsets of portlets not currently presented to the user. By developing a method for stacking subsets of portlets and allowing users to select which subset to display, the inventors resolved the issue of the cluttered portal page with a new and improved way of organizing and displaying the portlets comprising portal pages. The '234 patent thus extends the benefits of portal pages by allowing users to interact effectively with portal pages and generate as many portlets as they would like, based on their preferences, without overcrowding their device screen. Specifically, the '234 patent discloses and claims novel methods of organizing portlets not only as "stacks" but as "stacks of stacks," such that only a subset of portlets may be presented at any given time, based on characteristics such as common hardware, software, content type, markup, user profiles, and user preference.

**G.    Defendants Have Built Their Business By Infringing IBM's Patents.**

28. Expedia and its subsidiaries connect consumers wishing to make travel or related reservations with providers of those services. Expedia has grown rapidly and is now a Fortune 500 company with billions of dollars of revenue per year.

29. Rather than build their business on their own technologies, Expedia and its subsidiaries have appropriated the inventions of the Patents-In-Suit. Websites under Expedia's and/or its subsidiaries' control, including at least www.expedia.com, www.travelocity.com, www.hotels.com, www.hotwire.com, and www.orbitz.com use the technology claimed by the Patents-In-Suit to provide travel and reservation services to their users. Mobile applications under Expedia's and/or its subsidiaries' control, including the Expedia, Travelocity, Hotels.com, Hotwire, and Orbitz mobile applications running on, for example, Apple iOS and Google Android operating systems, use the technology claimed by the Patents-In-Suit to provide travel and reservation services to their users.

30. IBM began informing Defendants that they infringe IBM's patents in October of 2011. Since then, IBM has written several follow up letters to Orbitz, Expedia, and

HomeAway[13] to inform them that they were infringing additional patents, as the scope of their infringement became clear. On October 1, 2015, IBM sent a letter to inform Expedia that it was infringing the '440 patent.

31. Since at least 2003, Expedia, Hotels.com, and Hotwire have been part of the same company. Since at least 2015, Expedia and Orbitz have been part of the same company. On information and belief, Hotels.com, Hotwire, and Orbitz were aware or should have been aware that they were infringing at least the '440 patent based at least on the correspondence sent to Expedia in October 2015.

32. IBM has repeatedly attempted to engage with Expedia and its subsidiaries, and presented detailed examples of their infringement of numerous IBM patents. But Expedia and its subsidiaries have continued to willfully infringe IBM's patents so as to obtain the significant benefits of IBM's innovations without paying any compensation to IBM.

33. Because IBM's multi-year struggle to negotiate a license agreement that remedies Expedia and its subsidiaries' unlawful conduct in the form of infringement of the Patents-In-Suit and other IBM patents has failed, IBM has been forced to seek relief through litigation. Among other relief sought, IBM seeks royalties on the billions of dollars in revenue that Defendants have received based on their infringement of IBM's patented technology.

## JURISDICTION AND VENUE

34. IBM incorporates by reference paragraphs 1-33.

35. This action arises under the patent laws of the United States, including 35 U.S.C. § 271 *et seq*. The jurisdiction of this Court over the subject matter of this action is proper under 28 U.S.C. §§ 1331 and 1338(a).

---

[13] HomeAway.com, Inc. is a Delaware corporation ("HomeAway") and is a wholly-owned subsidiary of Expedia. *See* Declaration of Michael Marron In Support of Defendants' Motion To Dismiss Under Rule 12(b)(3) and Rule 12(b)(6) ¶ 5, *Int'l Business Machines Corp. v. Expedia, Inc.*, Case No. 1:17-cv-01875-LPS-CJB (D. Del. May 29, 2018) (D.I. 25). Homeaway is one of Expedia Group's "travel brands." Expedia Group's 2018 Form 10-K at 1. Homeaway provides listings for Home rentals, reservations, and related services to consumers and local partners through the website www.homeaway.com and through the Homeaway mobile applications.

36.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b).  Defendants conduct business in Arizona, by at least offering for sale and selling products and services through their websites (www.expedia.com, www.travelocity.com, www.hotels.com, www.hotwire.com, www.orbitz.com) and mobile applications, which are accessible in Arizona, and because infringement has occurred and continues to occur in Arizona.

37.  Venue is also proper as to Expedia because Expedia has committed acts of infringement in the District and has a regular and established place of business in the state of Arizona, at least through Expedia's servers related to expedia.com, travelocity.com, and the associated mobile applications located in Chandler, AZ.[14]

38.  On information and belief, Expedia operates an Expedia data center at 2121 S. Price Rd. #011, Chandler, Arizona 85286 (the "Chandler Data Center").  The Chandler Data Center is a physical place in the District, is operated in a steady, uniform, orderly, and methodical manner.  The Chandler Data Center is an established, continued physical presence in Arizona.  The Chandler Data Center is an established place of business of Expedia.



---

[14] *See* Declaration of Michael Marron In Support of Defendants' Motion To Dismiss Under Rule 12(b)(3) and Rule 12(b)(6) ¶ 8, *Int'l Business Machines Corp. v. Expedia, Inc.*, Case No. 1:17-cv-01875-LPS-CJB (D. Del. May 29, 2018) (D.I. 25).



39. The Maricopa County Treasurer's Office lists Expedia on tax records associated with the Chandler Data Center, and those tax records reflect that Expedia has paid the taxes due on the Chandler Data Center property from 2009 to 2017.  A copy of the Maricopa County Treasurer's Office 2018 tax details for Expedia for the Chandler Data Center can be found at http://treasurer.maricopa.gov/parcel/TaxDetails.aspx?taxyear=2018.

40. On information and belief, Expedia owns and operates Brand Expedia® and Travelocity® servers in the District at the Chandler Data Center.  For instance, Expedia has had server cabinets and racks installed at the Chandler Data Center at least in 2008 and 2016.

Devservices/commercial/tenant improvement/regular

2121 S Price Rd,, Chandler, AZ, 85286
2008-01-17

Expedia - suite c106 c4.01 cabinet and rack install

| Valuation: | Permit #: | Status: |
|---|---|---|
| $29,284 | TNT08-0055 | Closed |
| Fee: | Permit Type: | Building Type: |
| $655 | N/A | N/A |

1    BUILDZOOM, Federal Communications Group,

2    https://www.buildzoom.com/contractor/federal-communications-group-inc-tempe-az

3    (last visited April 4, 2019).



16    INSTAGRAM, BPG Technologies[15] (@bpgtech),

17    https://www.instagram.com/p/BOQQeC1Dho9/?utm_source=ig_share_sheet&igshid=1r

18    urpiucy52nh (last visited April 4, 2019).

19        41. On information and belief, to the extent that Expedia does not own the

20    Chandler Data Center, Expedia leases the space from Digital Realty Trust, Inc.  For

21    instance, the Chandler Data Center at 2121 S. Price Rd. #011, Chandler, Arizona 85286

22    is branded as "Digital Realty Data Center Solutions."

23

24

25

26

27        [15] "BPG Technologies, LLC specializes in the design and installation of structured

28    cabling systems" such as those required for the installation of new servers.  *See* http://bpgtech.com/index.php/about (last visited April 3, 2019).

42. On information and belief, Expedia leases/rents the Chandler Data Center space from Digital Realty Trust, Inc. and exercises complete control of the space that it leases/rents. For instance, Expedia hires contractors to perform work on their servers that are stored in the Chandler Data Center.

1
2
3
4
5
6
7
8
9
10
11
12
13



14 INSTAGRAM, BPG Technologies (@bpgtech),

15 https://www.instagram.com/p/BOQQeC1Dho9/?utm_source=ig_share_sheet&igshid=1r

16 urpiucy52nh (last visited April 4, 2019).

17    43.  Venue is also proper as to Expedia because Expedia has committed acts of

18 infringement in the District and has a regular and established place of business in the state

19 of Arizona, at least through Expedia's servers related to expedia.com and travelocity.com

20 and the associated mobile applications located in Phoenix, AZ.

21    44.  On information and belief, Expedia operates an Expedia data center at 615 N

22 48th St, Phoenix AZ 85008 (the "Phoenix Data Center").  The Phoenix Data Center is a

23 physical place in the District, is operated in a steady, uniform, orderly, and methodical

24 manner.  The Phoenix Data Center is an established, continued physical presence in

25 Arizona.  The Phoenix Data Center is an established place of business of Expedia.

26
27
28



45. The Maricopa County Treasurer's Office lists Expedia on tax records associated with the Phoenix Data Center, and those tax records reflect that Expedia has paid the taxes due on the Phoenix Data Center property from 2013 to 2017. A copy of the Maricopa County Treasurer's Office 2018 tax details for Expedia for the Phoenix Data Center can be found at http://treasurer.maricopa.gov/parcel/TaxDetails.aspx?taxyear=2018.

46. On information and belief, to the extent that Expedia does not own the Phoenix Data Center, Expedia leases the space from Iron Mountain. For instance, the Phoenix Data

16

Center at 615 N 48th St, Phoenix AZ 85008 is marked as an Iron Mountain Data Center.[16] On information and belief, Expedia leases/rents the Phoenix Data Center space from Iron Mountain and exercises complete control of the space that it leases/rents.



47.  On information and belief, Expedia owns and operates Brand Expedia® and Travelocity® servers in the District at the Phoenix Data Center.

48.  On information and belief, in addition to maintaining a physical place in the District, Expedia has employees who work at the Chandler Data Center and Phoenix Data Center.  For example, several individuals on the professional social networking website LinkedIn hold themselves out on their profiles as current employees of Expedia, Inc. in Chandler and Phoenix, Arizona.  The job titles in these LinkedIn profiles include: inventory coordinator, storage administrator, principal data center engineer, data center engineer, senior service transition manager, manager of data center operations, global manager of infrastructure operational support, project manager II data center services, and system administrator.  The job duties of these Expedia employees include oversight of "all the hardware inventory required to run the [Expedia] websites for the two data centers in Arizona."

49.  Venue is proper as to Hotels.com because Hotels.com has committed acts of

---

[16] *See* https://www.ironmountain.com/digital-transformation/data-centers/locations/phoenix-data-center.

infringement in the District and has a regular and established place of business in the state of Arizona, at least through Hotels.com's servers related to www.hotels.com and the associated mobile applications located in Chandler, Arizona at the Chandler Data Center and in Phoenix, AZ at the Phoenix Data Center.[17]  On information and belief, Hotels.com owns and operates the servers related to www.hotels.com and the associated mobile applications located in the Chandler Data Center and the Phoenix Data Center. The Chandler Data Center and the Phoenix Data Center are established places of business of Hotels.com.

50. The Maricopa County Treasurer's Office lists Hotels.com on tax records associated with the Chandler Data Center, and those tax records reflect that Hotels.com or has paid the taxes due on the Chandler Data Center property from 2014 to 2017.  A copy of the Maricopa County Treasurer's Office tax history for Hotels.com for the Chandler Data Center (from 2013 through 2018) can be found at http://treasurer.maricopa.gov/parcel/Summary.aspx?List=All.

51. On information and belief, Hotels.com leases the Chandler Data Center space from Digital Realty Trust, Inc.  For instance, the Chandler Data Center at 2121 S. Price Rd. #011, Chandler, Arizona 85286 is branded as "Digital Realty Data Center Solutions." On information and belief, Hotels.com leases/rents the Chandler Data Center space from Digital Realty Trust, Inc. and exercises complete control of the space that it leases/rents. On information and belief, to the extent that Hotels.com does not lease the Chandler Data Center space from Digital Realty Trust, Inc., Hotels.com leases, rents, or obtains space in the Chandler Data Center from Expedia and exercises complete control of the space that it leases or rents.

52. On information and belief, Hotels.com leases the Phoenix Data Center space from Iron Mountain.  For instance, the Phoenix Data Center at 615 N 48th St, Phoenix AZ 85008 is marked as an Iron Mountain Data Center.  On information and belief, Hotels.com

---

[17] *See* Declaration of Michael Marron In Support of Defendants' Motion To Dismiss Under Rule 12(b)(3) and Rule 12(b)(6) ¶ 10, *Int'l Business Machines Corp. v. Expedia, Inc.*, Case No. 1:17-cv-01875-LPS-CJB (D. Del. May 29, 2018) (D.I. 25).

leases/rents the Phoenix Data Center space from Iron Mountain and exercises complete control of the space that it leases/rents.  On information and belief, to the extent that Hotels.com does not lease the Phoenix Data Center space from Iron Mountain, Hotels.com leases, rents, or obtains space in the Phoenix Data center from Expedia and exercises complete control of the space that it leases or rents.

53.  Employees of Hotels.com operate and offer the website www.hotels.com and the associated mobile applications through the servers at the Chandler Data Center and Phoenix Data Center.  Further, on information and belief, employees of Hotels.com, together with Expedia, run, operate, and maintain the servers at the Chandler Data Center and Phoenix Data Center.

54.  To the extent employees of Hotels.com do not operate and offer the website www.hotels.com and the associated mobile applications through the shared servers at the Chandler Data Center and Phoenix Data Center, then on information and belief Expedia and its employees act as agents of Hotels.com to offer and operate the website www.hotels.com and the associated mobile applications through the shared servers at the Chandler Data Center and Phoenix Data Center.  For example, individuals on the professional social networking website LinkedIn hold themselves out on their profiles as current employees of Expedia, Inc. in Phoenix, Arizona, with job titles such as system administrator.  The job duties of these Expedia employees include maintaining "a multi-billion dollar infrastructure for one of the world's leading travel companies including *Hotels.com*, Expedia.com, Hotwire.com . . . and more."

55.  Venue is proper as to Hotwire because Hotwire has committed acts of infringement in the District and has a regular and established place of business in the state of Arizona, at least through Hotwire's servers related to www.hotwire.com and the associated mobile applications located in Chandler, Arizona at the Chandler Data Center and in Phoenix, AZ at the Phoenix Data Center.[18]  On information and belief, Hotwire owns and operates the servers related to www.hotwire.com and the associated mobile

---

[18] *Id.* at ¶ 14.

applications located in the Chandler Data Center and the Phoenix Data Center. The Chandler Data Center and the Phoenix Data Center are established places of business of Hotwire.

56. On information and belief, Hotwire leases the Chandler Data Center space from Digital Realty Trust, Inc.  For instance, the Chandler Data Center at 2121 S. Price Rd. #011, Chandler, Arizona 85286 is branded as "Digital Realty Data Center Solutions." On information and belief, Hotwire leases/rents the Chandler Data Center space from Digital Realty Trust, Inc. and exercises complete control of the space that it leases/rents. On information and belief, to the extent that Hotwire does not lease the Chandler Data Center space from Digital Realty Trust, Inc., Hotwire leases, rents, or obtains space in the Chandler Data Center from Expedia and exercises complete control of the space that it leases or rents.

57. On information and belief, Hotwire leases the Phoenix Data Center space from Iron Mountain.  For instance, the Phoenix Data Center at 615 N 48th St, Phoenix AZ 85008 is marked as an Iron Mountain Data Center.  On information and belief, Hotwire leases/rents the Phoenix Data Center space from Iron Mountain and exercises complete control of the space that it leases/rents.  On information and belief, to the extent that Hotwire does not lease the Phoenix Data Center space from Iron Mountain, Hotwire leases, rents, or obtains space in the Phoenix Data center from Expedia and exercises complete control of the space that it leases or rents.

58. On information and belief, employees of Hotwire operate and offer the website www.hotwire.com and the associated mobile applications through the servers at the Chandler Data Center and Phoenix Data Center.  Further, on information and belief, employees of Hotwire, together with Expedia, run, operate, and maintain the servers at the Chandler Data Center and Phoenix Data Center.

59. To the extent employees of Hotwire do not operate and offer the website www.hotels.com and the associated mobile applications through the shared servers at the Chandler Data Center and Phoenix Data Center, then on information and belief,

employees of Expedia act as agents of Hotwire to offer and operate the website www.hotwire.com and the associated mobile applications through the shared servers at the Chandler Data Center and Phoenix Data Center.  For example, individuals on the professional social networking website LinkedIn hold themselves out on their profiles as current employees of Expedia, Inc. Phoenix, Arizona, with job titles such as system administrator.  The job duties of these Expedia employees include maintaining "a multi-billion dollar infrastructure for one of the world's leading travel companies including Hotels.com, Expedia.com, *Hotwire.com* . . . and more."

60. Venue is proper as to Orbitz because Orbitz has committed acts of infringement in the District and has a regular and established place of business in the state of Arizona, at least through Orbitz's servers related to www.orbitz.com and the associated mobile applications located in Chandler, Arizona at the Chandler Data Center and in Phoenix, AZ at the Phoenix Data Center.[19]  On information and belief, Orbitz owns and operates the servers related to www.orbitz.com and the associated mobile applications located in the Chandler Data Center and the Phoenix Data Center.  The Chandler Data Center and the Phoenix Data Center are established places of business of Orbitz.

61. The Maricopa County Treasurer's Office lists Orbitz Worldwide as the recipient of a tax records associated with the Phoenix Data Center.  On information and belief, the Maricopa County Treasurer's Office tax records for the Phoenix Data Center identifying Orbitz Worldwide as a recipient of tax records associated with the Phoenix Data Center are a result of Orbitz, LLC's ownership and operation of the servers related to www.orbitz.com and the associated mobile applications located in the Phoenix Data Center.  On information and belief, Orbitz Worldwide acts as an agent of Orbitz, LLC in filing and paying any applicable taxes on behalf of Orbitz, LLC as a result of Orbitz, LLC's ownership and operation of the servers related to www.orbitz.com and the associated mobile applications located in the Phoenix Data Center.  A copy of the Maricopa County Treasurer's Office tax history for Orbitz for the Phoenix Data Center

---

[19] *Id.* at ¶ 13.

can be found at http://treasurer.maricopa.gov/parcel/Summary.aspx?List=All.  A copy of the Maricopa County Treasurer's Office 2018 tax details for Orbitz for the Phoenix Data Center can be found at http://treasurer.maricopa.gov/parcel/TaxDetails.aspx?taxyear=2018.

62.  On information and belief, Orbitz (or its parent company on behalf of Orbitz) leases the Chandler Data Center space from Digital Realty Trust, Inc.  For instance, the Chandler Data Center at 2121 S. Price Rd. #011, Chandler, Arizona 85286 is branded as "Digital Realty Data Center Solutions."  On information and belief, Orbitz (or its parent company on behalf of Orbitz) leases/rents the Chandler Data Center space from Digital Realty Trust, Inc. and exercises complete control of the space that it leases/rents.  On information and belief, to the extent that Orbitz (or its parent company on behalf of Orbitz) does not lease the Chandler Data Center space from Digital Realty Trust, Inc., Orbitz (or its parent company on behalf of Orbitz) leases, rents, or obtains space in the Chandler Data Center from Expedia and exercises complete control of the space that it leases or rents.

63.  On information and belief, Orbitz (or its parent company on behalf of Orbitz) leases the Phoenix Data Center space from Iron Mountain.  For instance, the Phoenix Data Center at 615 N 48th St, Phoenix AZ 85008 is marked as an Iron Mountain Data Center.  On information and belief, Orbitz (or its parent company on behalf of Orbitz) leases/rents the Phoenix Data Center space from Iron Mountain and exercises complete control of the space that it leases/rents.  To the extent Orbitz does not own or lease the space from Iron Mountain, then on information and belief, Orbitz's parent company acts as an agent on behalf of Orbitz, on instructions from Orbitz, and allows Orbitz to use the space from Iron Mountain as if Orbitz owned, leased, or rented the space itself.  On information and belief, to the extent that Orbitz (or its parent company on behalf of Orbitz) does not lease the Phoenix Data Center space from Iron Mountain, Orbitz (or its parent company on behalf of Orbitz) leases, rents, or obtains space in the Phoenix Data center from Expedia and exercises complete control of the space that it leases or rents.

64. On information and belief, employees of Orbitz operate and offer the website www.orbitz.com and the associated mobile applications through the servers at the Chandler Data Center and Phoenix Data Center. Further, on information and belief, employees of Orbitz, together with Expedia, run, operate, and maintain the servers at the Chandler Data Center and Phoenix Data Center.

65. To the extent employees of Orbitz do not operate and offer the website www.hotels.com and the associated mobile applications through the shared servers at the Chandler Data Center and Phoenix Data Center, on information and belief, employees of Expedia act as agents of Orbitz to offer and operate the website www.orbitz.com and the associated mobile applications through the shared servers at the Chandler Data Center and Phoenix Data Center.

66. Personal jurisdiction exists over Defendants because each Defendant conducts business in Arizona, by at least offering for sale and selling products and services through its websites and mobile applications, which are accessible in Arizona, and because infringement has occurred and continues to occur in Arizona.

**COUNT ONE**

**INFRINGEMENT OF THE '440 PATENT**

67. IBM incorporates by reference paragraphs 1-66.

68. IBM is the owner of all right, title and interest in the '440 patent. The '440 patent was duly and properly issued by the USPTO on July 13, 2010. The '440 patent is a reissue application of U.S. Patent No. 7,216,149, which was duly and properly issued by the USPTO on May 8, 2007. The '440 patent was duly assigned to IBM. A copy of the '440 patent is attached hereto as **Exhibit A**.

69. In violation of 35 U.S.C. § 271, Expedia and the subsidiaries it controls have infringed, contributed to the infringement of, and/or induced others to infringe one or more of the claims of the '440 patent by having made, designed, offered for sale, sold, provided, used, maintained, and/or supported their websites, including www.expedia.com, www.travelocity.com, www.hotels.com, www.hotwire.com, and www.orbitz.com and the

Expedia, Travelocity, Hotels.com, Hotwire, and Orbitz mobile applications running on, for example, Apple iOS and Google Android operating systems. Defendants' infringement is continuing.

70. As outlined below, on information and belief, Expedia, Hotels.com, Hotwire, and Orbitz, infringe the '440 patent.

71. Furthermore, Expedia directs and controls the other Defendants' infringement of the '440 patent. Expedia "operate[s] several technology platforms that support [Expedia's] brands. Expedia's technology platform supports [Expedia's] full-service and multi-product brands, including Brand Expedia, Orbitz . . . as well as certain parts of the Hotwire brand. The Hotels.com technology platform supports [Expedia's] hotel-only offering, including Hotels.com . . . ."[20] Through Expedia's control of the technological platforms used in the other Defendants' websites and mobile applications, Expedia directs, controls, and causes the infringement of the '440 patent for each of the identified websites and associated mobile applications below.

72. For example, Expedia infringes because www.expedia.com and the associated mobile applications infringed at least claim 1 of the '440 patent at least by:

a. Presenting a system (such as the Expedia travel web site) for obtaining enriched activity data in a client-server communications network (such as data contained in a HTTP request) wherein information requested by a network element (such as information in a web page) is cached at one or more other network elements (such as a remote server), comprising:

b. a server network element including server software and a database for generating and storing a plurality of information files that are accessible to a requesting network element (such as pages or a directory of the Expedia web site), the information files (such as web pages) including text files (such as HTML files) and key words (such as header, metadata, link, and anchor tags in the HTML file) that are interpreted by the requesting network element to display the information requested (such as a web page), the

[20] Expedia Group's 2018 Form 10-K at 7.

information file (such as the web page) further including an uncacheable single pixel Graphics Image Format (GIF) request (such as a single pixel GIF indicated by a "1x1.gif" in a request with a cache-control header in the response indicating "no-cache, no-store");

c.    wherein upon interpreting the information file, the single pixel GIF request is transmitted from the requesting element (such as a request for the "1x1.gif" file) over the communications network to the server network element (such as an Expedia server) which reads and stores enriched data contained therein (such as data contained in the single pixel GIF request).

73. For example, Expedia infringes because www.travelocity.com and the associated mobile applications infringed at least claim 1 of the '440 patent at least by:

a.    Presenting a system (such as the Travelocity travel web site) for obtaining enriched activity data in a client-server communications network (such as data contained in a HTTP request) wherein information requested by a network element (such as information in a web page) is cached at one or more other network elements (such as a remote server), comprising:

b.    a server network element including server software and a database for generating and storing a plurality of information files that are accessible to a requesting network element (such as pages or a directory of the Travelocity web site), the information files (such as web pages) including text files (such as HTML files) and key words (such as header, metadata, link, and anchor tags in the HTML file) that are interpreted by the requesting network element to display the information requested (such as a web page), the information file (such as the web page) further including an uncacheable single pixel Graphics Image Format (GIF) request (such as a single pixel GIF indicated by a "1x1.gif" in a request with a cache-control header in the response indicating "no-cache, no-store");

c.    wherein upon interpreting the information file, the single pixel GIF request is transmitted from the requesting element (such as a request for the "1x1.gif" file) over the communications network to the server network element (such as a Travelocity server) which reads and stores enriched data contained therein (such as data contained in

1  the single pixel GIF request).

2  74. For example, Hotels.com infringes because www.hotels.com and the

3  associated mobile applications infringed at least claim 1 of the '440 patent at least by:

4  a.  Presenting a system (such as the Hotels.com travel web site) for

5  obtaining enriched activity data in a client-server communications network (such as data

6  contained in a HTTP request) wherein information requested by a network element (such

7  as information in a web page) is cached at one or more other network elements (such as a

8  remote server), comprising:

9  b.  a server network element including server software and a database

10  for generating and storing a plurality of information files that are accessible to a requesting

11  network element (such as pages or a directory of the Hotels.com web site), the information

12  files (such as web pages) including text files (such as HTML files) and key words (such

13  as header, metadata, link, and anchor tags in the HTML file) that are interpreted by the

14  requesting network element to display the information requested (such as a web page), the

15  information file (such as the web page) further including an uncacheable single pixel

16  Graphics Image Format (GIF) request (such as a single pixel GIF indicated by a "1x1.gif"

17  in a request with a cache-control header in the response indicating "no-cache, no-store");

18  c.  wherein upon interpreting the information file, the single pixel GIF

19  request is transmitted from the requesting element (such as a request for the "1x1.gif" file)

20  over the communications network to the server network element (such as a Hotels.com

21  server) which reads and stores enriched data contained therein (such as data contained in

22  the single pixel GIF request).

23  75. For example, Hotwire infringes because www.hotwire.com and the associated

24  mobile applications infringed at least claim 1 of the '440 patent at least by:

25  a.  Presenting a system (such as the Hotwire travel web site) for

26  obtaining enriched activity data in a client-server communications network (such as data

27  contained in a HTTP request) wherein information requested by a network element (such

28  as information in a web page) is cached at one or more other network elements (such as a

remote server), comprising:

b.    a server network element including server software and a database for generating and storing (such as the homepage URL) a plurality of information files that are accessible to a requesting network element (such as pages or a directory of the Hotwire web site), the information files (such as web pages) including text files (such as HTML files) and key words (such as header, metadata, link, and anchor tags in the HTML file) that are interpreted by the requesting network element to display the information requested (such as a web page), the information file (such as the web page) further including an uncacheable single pixel Graphics Image Format (GIF) request (such as a single pixel GIF indicated by a "1x1.gif" in a request with a cache-control header in the response indicating "no-cache, no-store");

c.    wherein upon interpreting the information file, the single pixel GIF request is transmitted from the requesting element (such as a request for the "1x1.gif" file) over the communications network to the server network element (such as a Hotwire server) which reads and stores enriched data contained therein (such as data contained in the single pixel GIF request).

76. For example, Orbitz infringes because www.orbitz.com and the associated mobile applications infringed at least claim 1 of the '440 patent at least by:

a.    Presenting a system (such as the Orbitz travel web site) for obtaining enriched activity data in a client-server communications network (such as data contained in a HTTP request) wherein information requested by a network element (such as information in a web page) is cached at one or more other network elements (such as a remote server), comprising:

b.    a server network element including server software and a database for generating and storing a plurality of information files that are accessible to a requesting network element (such as pages or a directory of the Orbitz web site), the information files (such as web pages) including text files (such as HTML files) and key words (such as header, metadata, link, and anchor tags in the HTML file) that are interpreted by the

27

requesting network element to display the information requested (such as a web page), the information file (such as the web pages) further including an uncacheable single pixel Graphics Image Format (GIF) request (such as a single pixel GIF indicated by a "1x1.gif" in a request with a cache-control header in the response indicating "no-cache, no-store");

        c.    wherein upon interpreting the information file, the single pixel GIF request is transmitted from the requesting element (such as a request for the "1x1.gif" file) over the communications network to the server network element (such as an Orbitz server) which reads and stores enriched data contained therein (such as data contained in the single pixel GIF request).

77.  IBM has been damaged by the infringement of its '440 patent by Defendants. IBM is entitled to recover from Defendants the damages sustained by IBM as a result of Defendants' wrongful acts.

78.  IBM has suffered and continues to suffer irreparable harm, for which there is no adequate remedy at law, and will continue to do so unless Defendants are enjoined therefrom by this Court.

79.  The infringement by Defendants of the '440 patent was deliberate and willful, entitling IBM to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.  In committing these acts of infringement, Defendants actually knew or should have known that their actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent.

## COUNT TWO

## INFRINGEMENT OF THE '193 PATENT

80.  IBM incorporates by reference paragraphs 1-79.

81.  IBM is the owner of all right, title and interest in the '193 patent.  The '193 patent was duly and properly issued by the USPTO on August 17, 2004.  The '193 patent was duly assigned to IBM.  A copy of the '193 patent is attached hereto as **Exhibit B**.

82.  In violation of 35 U.S.C. § 271, Expedia and the subsidiaries it controls have

infringed, contributed to the infringement of, and/or induced others to infringe one or more of the claims of the '193 patent by having made, designed, offered for sale, sold, provided, used, maintained, and/or supported their websites, including www.expedia.com, www.travelocity.com, www.hotels.com, www.hotwire.com, and www.orbitz.com and the associated mobile applications, including the Expedia, Travelocity, Hotels.com, Hotwire, and Orbitz applications for mobile devices running on, for example, the Apple iOS and Google Android operating systems.   Defendants' infringement is continuing.

83.  As outlined below, on information and belief, Expedia, Hotels.com, Hotwire, and Orbitz infringe the '193 patent.

84.  Furthermore, Expedia directs and controls the other Defendants' infringement of the '193 patent.   Expedia "operate[s] several technology platforms that support [Expedia's] brands.  Expedia's technology platform supports [Expedia's] full-service and multi-product brands, including Brand Expedia, Orbitz . . . as well as certain parts of the Hotwire brand.  The Hotels.com technology platform supports [Expedia's] hotel-only offering, including Hotels.com . . . ."[21]  Through Expedia's control of the technological platforms used in the other Defendants' websites and mobile applications, Expedia directs, controls, and causes the infringement of the '193 patent for each of the identified websites and associated mobile applications below.

85.  For example, Expedia infringes because www.expedia.com and Expedia mobile applications infringe at least claim 1 of the '193 patent at least by:

   a.    Providing a graphical user interface (such as the Expedia GUI) for a customer self service system (such as the Expedia travel web site) that performs resource search and selection (such as allowing travelers to select vacation packages, flights, hotels, rental cars, rail, cruises, activities, attractions, and services) comprising:

   b.    a first visual workspace (such as the initial Expedia search/query screen) comprising entry field enabling entry of a query for a resource (such as the query fields on the initial Expedia search/query screen) and, one or more selectable graphical

---

[21] Expedia Group's 2018 Form 10-K at 7.

user context elements (such as the search type icons on the initial Expedia search/query screen), each element representing a context associated with the current user state (such as the user contexts represented by the search type icons on the initial Expedia search/query screen) and having context attributes (such as the mode of transportation, mode of housing, preferred travel class, number of travelers, and number of rooms) and attribute values (such as the values associated with the aforementioned context attributes (e.g., flight, hotel, car, number of adults, number of rooms, economy/coach) associated therewith;

c.    a second visual workspace for visualizing (such as the Expedia search results screen) the set of resources that the customer self service system has determined to match the user's query (such as each search result displayed on the search results page), said system indicating a degree of fit of said determined resources with said query (such as the sort order of the search results displayed on the search results page);

d.    a third visual workspace (such as the "Change search" window accessed from the Expedia search results screen) for enabling said user to select and modify context attribute values to enable increased specificity and accuracy of a query's search parameters (such as the dropdown fields for the number of adults and/or children in each room and the seating class), said third visual workspace further enabling said user to specify resource selection parameters and relevant resource evaluation criteria utilized by (such as checkboxes for the duration of a traveler's hotel stay and/or to indicate a preference for direct flights only) a search mechanism in said system (such as the search button in the "Change search" window), said degree of fit indication based on said user's context, and said associated resource selection parameters and relevant resource evaluation criteria (such as the sort order of the search results displayed on the search results page); and,

e.    a mechanism enabling said user to navigate among said first, second and third visual workspaces to thereby identify and improve selection logic and response sets fitted to said query (such as the search button on the initial Expedia search/query

1    screen and/or the "Change search" link in the Expedia search results screen).

2        86.  For example, Expedia infringes because www.travelocity.com and Travelocity

3    mobile applications infringe at least claim 1 of the '193 patent at least by:

4            a.    Providing a graphical user interface (such as the Travelocity GUI)

5    for a customer self service system (such as the Travelocity travel web site) that performs

6    resource search and selection (such as allowing travelers to select vacation packages,

7    flights, hotels, rental cars, rail, cruises, activities, attractions, and services) comprising:

8            b.    a first visual workspace (such as the initial Travelocity search/query

9    screen) comprising entry field enabling entry of a query for a resource (such as the query

10   fields on the initial Travelocity search/query screen) and, one or more selectable graphical

11   user context elements (such as the search type icons on the initial Travelocity search/query

12   screen), each element representing a context associated with the current user state (such

13   as the user contexts represented by the search type icons on the initial Travelocity

14   search/query screen) and having context attributes (such as the mode of transportation,

15   mode of housing, preferred travel class, number of travelers, and number of rooms) and

16   attribute values (such as the values associated with the aforementioned context attributes

17   (e.g., flight, hotel, car, number of adults, number of rooms, economy/coach)) associated

18   therewith;

19           c.    a second visual workspace for visualizing (such as the Travelocity

20   search results screen) the set of resources that the customer self service system has

21   determined to match the user's query (such as each search result displayed on the search

22   results page), said system indicating a degree of fit of said determined resources with said

23   query (such as the sort order of the search results displayed on the search results page);

24           d.    a third visual workspace (such as the "Change search" window

25   accessed from the Expedia search results screen) for enabling said user to select and

26   modify context attribute values to enable increased specificity and accuracy of a query's

27   search parameters (such as the dropdown fields for the number of adults and/or children

28   in each room and the seating class), said third visual workspace further enabling said user

to specify resource selection parameters and relevant resource evaluation criteria utilized by (such as checkboxes for the duration of a traveler's hotel stay and/or to indicate a preference for direct flights only) a search mechanism in said system (such as the search button in the "Change search" window), said degree of fit indication based on said user's context, and said associated resource selection parameters and relevant resource evaluation criteria (such as the sort order of the search results displayed on the search results page); and,

e.     a mechanism enabling said user to navigate among said first, second and third visual workspaces to thereby identify and improve selection logic and response sets fitted to said query (such as the search button on the initial Travelocity search/query screen and/or the "Change search" link in the Travelocity search results screen).

87. For example, Hotels.com infringes because www.hotels.com and associated mobile applications infringe at least claim 1 of the '193 patent at least by:

a.     Providing a graphical user interface (such as the Hotels.com GUI) for a customer self service system (such as the Hotels.com travel web site) that performs resource search and selection (such as allowing travelers to select lodging accommodations) comprising:

b.     a first visual workspace (such as the initial Hotels.com "Packages" search/query screen) comprising entry field enabling entry of a query for a resource (such as the query fields on the initial "Packages" Hotels.com search/query screen) and, one or more selectable graphical user context elements (such as the search type icons on the initial Hotels.com "Packages" search/query screen), each element representing a context associated with the current user state (such as the user contexts represented by the search type icons on the initial Hotels.com "Packages" search/query screen) and having context attributes (such as the mode of transportation, mode of housing, preferred travel class, number of travelers, and number of rooms) and attribute values (such as the values associated with the aforementioned context attributes (e.g., flight, hotel, number of adults, number of rooms, economy/coach)) associated therewith;

c.    a second visual workspace for visualizing (such as the Hotels.com search results screen) the set of resources that the customer self service system has determined to match the user's query (such as each search result displayed on the search results page), said system indicating a degree of fit of said determined resources with said query (such as the sort order of the search results displayed on the search results page);

d.    a third visual workspace (such as the "Change search" window accessed from the Hotels.com search results screen) for enabling said user to select and modify context attribute values to enable increased specificity and accuracy of a query's search parameters (such as the dropdown fields for the number of adults and/or children in each room and the seating class), said third visual workspace further enabling said user to specify resource selection parameters and relevant resource evaluation criteria utilized by (such as checkboxes for the duration of a traveler's hotel stay and/or to indicate a preference for direct flights only) a search mechanism in said system (such as the search button in the "Change search" window), said degree of fit indication based on said user's context, and said associated resource selection parameters and relevant resource evaluation criteria (such as the sort order of the search results displayed on the search results page); and,

e.    a mechanism enabling said user to navigate among said first, second and third visual workspaces to thereby identify and improve selection logic and response sets fitted to said query (such as the search button on the initial Hotels.com "Packages" search/query screen and/or the "Change search" link in the Hotels.com search results screen).

88. For example, Hotwire infringes because www.hotwire.com and associated mobile applications infringe at least claim 1 of the '193 patent at least by:

a.    Providing a graphical user interface (such as the Hotwire GUI) for a customer self service system (such as the Hotwire travel web site) that performs resource search and selection (such as allowing travelers to select excess seats, rooms, and cars) comprising:

1          b.      a first visual workspace (such as the initial Hotwire search/query

2    screen) comprising entry field enabling entry of a query for a resource (such as the query

3    fields on the initial Hotwire search/query screen) and, one or more selectable graphical

4    user context elements (such as the search type icons on the initial Hotwire search/query

5    screen), each element representing a context associated with the current user state (such

6    as the user contexts represented by the search type icons on the initial Hotwire"

7    search/query screen) and having context attributes (such as the mode of transportation,

8    mode of housing, number of travelers, and number of rooms) and attribute values (such

9    as the values associated with the aforementioned context attributes (e.g., flight, hotel, car,

10   number of adults, number of rooms, number of children)) associated therewith;

11         c.      a second visual workspace for visualizing (such as the Hotwire

12   search results screen) the set of resources that the customer self service system has

13   determined to match the user's query (such as each search result displayed on the search

14   results page), said system indicating a degree of fit of said determined resources with said

15   query (such as the sort order of the search results displayed on the search results page);

16         d.      a third visual workspace (such as the "Change search" window

17   accessed from the Hotwire search results screen) for enabling said user to select and

18   modify context attribute values to enable increased specificity and accuracy of a query's

19   search parameters (such as the dropdown fields for the number of adults and/or children

20   in each room and the seating class), said third visual workspace further enabling said user

21   to specify resource selection parameters and relevant resource evaluation criteria utilized

22   by (such as checkboxes for the duration of a traveler's hotel stay and/or to indicate a

23   preference for direct flights only) a search mechanism in said system (such as the search

24   button in the "Change search" window), said degree of fit indication based on said user's

25   context, and said associated resource selection parameters and relevant resource

26   evaluation criteria (such as the sort order of the search results displayed on the search

27   results page); and,

28         e.      a mechanism enabling said user to navigate among said first, second

34

and third visual workspaces to thereby identify and improve selection logic and response sets fitted to said query (such as the search button on the initial Hotwire search/query screen and/or the "Change search" link in the Hotwire search results screen).

89.  For example, Orbitz infringes because www.orbitz.com and associated mobile applications infringe at least claim 1 of the '193 patent at least by:

a.    Providing a graphical user interface (such as the Orbitz GUI) for a customer self service system (such as the Orbitz travel web site) that performs resource search and selection (such as allowing travelers to select flights, hotels, and packages) comprising:

b.    a first visual workspace (such as the initial Orbitz search/query screen) comprising entry field enabling entry of a query for a resource (such as the query fields on the initial Orbitz search/query screen) and, one or more selectable graphical user context elements (such as the search type icons on the initial Orbitz search/query screen), each element representing a context associated with the current user state (such as the user contexts represented by the search type icons on the initial Orbitz search/query screen) and having context attributes (such as the mode of transportation, mode of housing, preferred travel class, number of travelers, and number of rooms) and attribute values (such as the values associated with the aforementioned context attributes (e.g., flight, hotel, number of adults, number of rooms, number of children, economy/coach)) associated therewith;

c.    a second visual workspace for visualizing (such as the Orbitz search results screen) the set of resources that the customer self service system has determined to match the user's query (such as each search result displayed on the search results page), said system indicating a degree of fit of said determined resources with said query (such as the sort order of the search results displayed on the search results page);

d.    a third visual workspace (such as the "Change search" window accessed from the Orbitz search results screen) for enabling said user to select and modify context attribute values to enable increased specificity and accuracy of a query's search

parameters (such as the dropdown fields for the number of adults and/or children in each room and the seating class), said third visual workspace further enabling said user to specify resource selection parameters and relevant resource evaluation criteria utilized by (such as checkboxes for the duration of a traveler's hotel stay and/or to indicate a preference for direct flights only) a search mechanism in said system (such as the search button in the "Change search" window), said degree of fit indication based on said user's context, and said associated resource selection parameters and relevant resource evaluation criteria (such as the sort order of the search results displayed on the search results page); and,

e.      a mechanism enabling said user to navigate among said first, second and third visual workspaces to thereby identify and improve selection logic and response sets fitted to said query (such as the search button on the initial Orbitz search/query screen and/or the "Change search" link in the Orbitz search results screen).

90.  On information and belief, end users and customers of www.expedia.com, www.travelocity.com, www.hotels.com, www.hotwire.com, and www.orbitz.com and the associated mobile applications directly infringe the '193 patent through the use of the websites and the mobile applications to make at least airplane, rental car, and hotel reservations.  Expedia Group's 2018 Form 10-K lists $99,727,000,000 of gross bookings in 2018, indicating that numerous end users and customers used www.expedia.com, www.travelocity.com, www.hotels.com, www.hotwire.com, and www.orbitz.com in order to make a purchase and thereby infringe the '193 patent.

91.  On information and belief, Defendants have intended and continue to intend to induce patent infringement by third parties.  For example, Defendants have and continue to encourage and instruct customers and end users to use www.expedia.com, www.travelocity.com, www.hotels.com, www.hotwire.com, and www.orbitz.com and the associated mobile applications in a manner that infringes the '193 patent by advertising the websites and the associated mobile applications, by providing customer support, and by designing their websites and the associated mobile applications in such a way that the

use of the websites and the associated mobile applications by an end user or customer infringes the '193 patent.  For example, https://www.expedia.com/service/ provides direction and support for expedia.com, https://www.travelocity.com/service/ provides direction and support for travelocity.com, https://service.hotels.com/en-us/ provides direction and support for hotels.com, http://helpcenter.hotwire.com provides direction and support for hotwire.com, and https://www.orbitz.com/service provides direction and support for orbitz.com.  On information and belief, to the extent that Defendants were not aware that they were encouraging their customers and end users to infringe the '193 patent, their lack of knowledge was based on being willfully blind to the possibility that their acts would cause infringement.

92.  On information and belief, Defendants have intended and continue to intend to contribute to patent infringement by third parties.  For example, Defendants provide a graphical user interface for a customer self-selection system that performs resource search and selection using visual workspaces in a manner that infringes the '193 patent and does not have substantial non-infringing uses.

93.  IBM has been damaged by the infringement of its '193 patent by Defendants and will continue to be damaged by such infringement.  IBM is entitled to recover from Defendants the damages sustained by IBM as a result of Defendants' wrongful acts.

94.  IBM has suffered and continues to suffer irreparable harm, for which there is no adequate remedy at law, and will continue to do so unless Defendants are enjoined therefrom by this Court.

## COUNT THREE

## INFRINGEMENT OF THE '234 PATENT

95.  IBM incorporates by reference paragraphs 1-94.

96.  IBM is the owner of all right, title and interest in the '234 patent.  The '234 patent was duly and properly issued by the USPTO on June 2, 2009.  The '234 patent was duly assigned to IBM.  A copy of the '234 patent is attached hereto as **Exhibit C**.

97.  In violation of 35 U.S.C. § 271, Expedia and the subsidiaries it controls have

infringed, contributed to the infringement of, and/or induced others to infringe one or more of the claims of the '234 patent by having made, designed, offered for sale, sold, provided, used, maintained, and/or supported their websites, including www.expedia.com, www.travelocity.com, www.hotwire.com, www.hotels.com, and www.orbitz.com and the associated mobile applications, including the Expedia, Travelocity, Hotwire, Hotels.com, and Orbitz applications for mobile devices running on, for example, the Apple iOS and Google Android operating systems.  Expedia and Defendants' infringement is continuing.

98.  As outlined below, on information and belief, Expedia, Hotels.com, Hotwire, and Orbitz infringe the '234 patent.

99.  Furthermore, Expedia directs and controls the other Defendants' infringement of the '234 patent.  Expedia "operate[s] several technology platforms that support [Expedia's] brands.  Expedia's technology platform supports [Expedia's] full-service and multi-product brands, including Brand Expedia, Orbitz . . . as well as certain parts of the Hotwire brand.  The Hotels.com technology platform supports [Expedia's] hotel-only offering, including Hotels.com . . . ."[22]  Through Expedia's control of the technological platforms used in the other Defendants' websites and mobile applications, Expedia directs, controls, and causes the infringement of the '234 patent for each of the identified websites and associated mobile applications below.

100. For example, Expedia infringes because www.expedia.com and associated mobile applications infringe claim 1 of the '234 patent by, for example:

    a.    Generating a portal page (such as the search results page on www.expedia.com), wherein the portal page includes a plurality of portlets (such as each search result displayed on the search results page), the method comprising;

    b.    Determining whether a subset of portlets is stackable (such as organizing the individual search results based on featured results); and;

    c.    Responsive to the subset of portlets being stackable, identifying two or more stacks of portlets that are stackable (such as featured results, price, guest rating,

---

[22] Expedia Group's 2018 Form 10-K at 7.

1   vacation rentals, or package discounts search results), and;

2         d.    Generating the portal page (such as the search results page on

3   www.expedia.com) such that the two or more stacks of portlets are generated as a stack

4   of stacks, wherein the stack of stacks presents a first stack of portlets (such as the display

5   of search results initially presented to the user) and a control for selecting a second stack

6   of portlets from within the two or more stacks of portlets that is not currently presented

7   (such as providing the means for the user to select other stacks of portlets not currently

8   presented to the user, such as featured results, price, guest rating, vacation rentals, or

9   package discounts search results).

10       101. For example, Expedia infringes because www.travelocity.com and associated

11  mobile applications infringe claim 1 of the '234 patent by, for example:

12        a.    Generating a portal page (such as the search results page on

13  www.travelocity.com), wherein the portal page includes a plurality of portlets (such as

14  each search result displayed on the search results page), the method comprising;

15        b.    Determining whether a subset of portlets is stackable (such as

16  organizing the individual search results based on featured results); and;

17        c.    Responsive to the subset of portlets being stackable, identifying two

18  or more stacks of portlets that are stackable (such as featured results, price, guest rating,

19  vacation rentals, or package discounts search results), and;

20        d.    Generating the portal page (such as the search results page on

21  www.travelocity.com) such that the two or more stacks of portlets are generated as a stack

22  of stacks, wherein the stack of stacks presents a first stack of portlets (such as the display

23  of search results initially presented to the user) and a control for selecting a second stack

24  of portlets from within the two or more stacks of portlets that is not currently presented

25  (such as providing the means for the user to select other stacks of portlets not currently

26  presented to the user, such as featured results, price, guest rating, vacation rentals, or

27  package discounts search results).

28       102. For example, Hotels.com infringes because www.hotels.com and associated

mobile applications infringe claim 1 of the '234 patent by, for example:

a.     Generating a portal page (such as the search results page on www.hotels.com), wherein the portal page includes a plurality of portlets (such as each search result displayed on the search results page), the method comprising;

b.     Determining whether a subset of portlets is stackable (such as organizing the individual search results based on featured results); and;

c.     Responsive to the subset of portlets being stackable, identifying two or more stacks of portlets that are stackable (such as featured results, star rating, distance, guest rating, or price search results), and;

d.     Generating the portal page (such as the search results page on www.hotels.com) such that the two or more stacks of portlets are generated as a stack of stacks, wherein the stack of stacks presents a first stack of portlets (such as the display of search results initially presented to the user) and a control for selecting a second stack of portlets from within the two or more stacks of portlets that is not currently presented (such as providing the means for user to select other stacks of portlets not currently presented to the user, such as featured results, star rating, distance, guest rating, or price search results).

103.   For example, Hotwire infringes because www.hotwire.com and associated mobile applications infringe claim 1 of the '234 patent by, for example:

a.     Generating a portal page (such as the search results page on www.hotwire.com), wherein the portal page includes a plurality of portlets (such as each search result displayed on the search results page), the method comprising;

b.     Determining whether a subset of portlets is stackable (such as organizing the individual search results based on popularity); and;

c.     Responsive to the subset of portlets being stackable, identifying two or more stacks of portlets that are stackable (such as popularity, price, or hotel class search results), and;

d.     Generating the portal page (such as the search results page on www.hotwire.com) such that the two or more stacks of portlets are generated as a stack of

stacks, wherein the stack of stacks presents a first stack of portlets (such as the display of search results initially presented to the user) and a control for selecting a second stack of portlets from within the two or more stacks of portlets that is not currently presented (such as providing the means for the user to select other stacks of portlets not currently presented to the user, such as popularity, price, or hotel class search results).

104. For example, Orbitz infringes because www.orbitz.com and associated mobile applications infringe claim 1 of the '234 patent by, for example:

        a.      Generating a portal page (such as the search results page on www.orbitz.com), wherein the portal page includes a plurality of portlets (such as each search result displayed on the search results page), the method comprising;

        b.      Determining whether a subset of portlets is stackable (such as organizing the individual search results based on featured results); and;

        c.      Responsive to the subset of portlets being stackable, identifying two or more stacks of portlets that are stackable (such as featured results, price, guest rating, vacation rentals, or package discount search results), and;

        d.      Generating the portal page (such as the search results page on www.orbitz.com) such that the two or more stacks of portlets are generated as a stack of stacks, wherein the stack of stacks presents a first stack of portlets (such as the display of search results initially presented to the user) and a control for selecting a second stack of portlets from within the two or more stacks of portlets that is not currently presented (such as providing the means for the user to select other stacks of portlets not currently presented to the user, such as featured results, price, guest rating, vacation rentals, or package discount search results).

105. IBM has been damaged by the infringement of its '234 patent by Defendants and will continue to be damaged by such infringement.  IBM is entitled to recover from Defendants the damages sustained by IBM as a result of Defendants' wrongful acts.

106. IBM has suffered and continues to suffer irreparable harm, for which there is no adequate remedy at law, and will continue to do so unless Defendants are enjoined

therefrom by this Court.

## RELIEF REQUESTED

Wherefore, IBM respectfully requests that this Court enter judgment against the Defendants as follows:

A.    That the '440 patent has been and continues to be infringed by Defendants;

B.    That Defendants' infringement of the '440 patent has been willful;

C.    An injunction against further infringement of the '440 patent;

D.    That the '193 patent has been and continues to be infringed by Defendants;

E.    An injunction against further infringement of the '193 patent;

F.    That the '234 patent has been and continues to be infringed by Defendants;

G.    An injunction against further infringement of the '234 patent;

H.    An award of damages adequate to compensate IBM for the patent infringement that has occurred pre verdict and for damages that occur post-verdict, together with pre-judgment interest and costs;

I.    An award of all other damages permitted by 35 U.S.C. § 284, including increased damages up to three times the amount of compensatory damages found;

J.    That this is an exceptional case and an award to IBM of its costs and reasonable attorneys' fees incurred in this action as provided by 35 U.S.C. § 285; and

K.    Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

IBM hereby demands trial by jury on all claims and issues so triable.

DATED this 9th day of April, 2019.

OSBORN MALEDON, P.A.


By  s/Eric. M. Fraser
Eric M. Fraser
2929 N. Central Avenue, Suite 2100
Phoenix, Arizona  85012-2793

Karim Z. Oussayef (*pro hac vice* pending)
Robert C. Harrits (*pro hac vice* pending)
Desmarais LLP
230 Park Avenue
New York, NY  10169

Attorneys for Plaintiff
International Business Machines Corporation