Karim Z. Oussayef (*pro hac vice*)
Robert C. Harrits (*pro hac vice*)
Desmarais LLP
230 Park Avenue
New York, New York 10169
(212) 351-3427
koussayef@desmaraisllp.com
rharrits@desmaraisllp.com

Brett L. Dunkelman, No. 006740
Eric M. Fraser, No. 027241
Osborn Maledon, P.A.
2929 N. Central Avenue, Suite 2100
Phoenix, Arizona 85012-2793
(602) 640-9000
bdunkelman@omlaw.com
efraser@omlaw.com

Attorneys for Plaintiff
International Business Machines Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| International Business Machines Corporation, a New York Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Expedia, Inc., a Washington Corporation; Hotels.com, L.P., a Texas Limited Partnership; Hotwire, Inc., a Delaware Corporation; and Orbitz, LLC, a Delaware Limited Liability Company,<br><br>Defendants. | No. 2:19-cv-02296-SMB<br><br>**PLAINTIFF IBM'S OPPOSITION TO DEFENDANT EXPEDIA, INC.'S MOTION TO TRANSFER VENUE** |

## I.      INTRODUCTION

Plaintiff Intellectual Business Machines Corporation ("IBM") brought suit against Expedia, Inc. ("Expedia"), Hotels.com, L.P. ("Hotels.com"), Hotwire, Inc. ("Hotwire"), and Orbitz, LLC ("Orbitz") (collectively, "Defendants") in the District of Arizona because it is the common venue for IBM's claims for patent infringement against each of the four related Defendants. A common venue is particularly important here because this case raises common questions of law and fact across the four Defendants, including overlapping infringement allegations that may give rise to joint and several liability among the Defendants. For example, IBM's claims for patent infringement against the Defendants involve the same patents—U.S. Patent No. RE41,440, U.S. Patent No. 6,778,193, and U.S. Patent No. 7,543,234[1]—and implicate infringing systems and technologies common to all four Defendants. Moreover, the four Defendants are not unrelated entities but rather share close parent/subsidiary/affiliate corporate relationships: Expedia is the parent company that wholly-owns (directly or indirectly) the other three defendants, which in turn are affiliates of one another.

The four related Defendants have substantial ties to Arizona, making venue proper in this district, including through Defendants' physical presence and operation of infringing servers at data centers located in Chandler, Arizona and Phoenix, Arizona. But the Court need not simply take IBM's word for it—Defendants ***expressly relied on*** their connections to Arizona in a prior patent infringement case brought by IBM in the District of Delaware. There, Defendants attempted to avoid venue by submitting a sworn declaration from a senior executive asserting the Defendants' relevant connections ***to Arizona***. (Ex. A.)[2] Among other things, Defendants expressly represented that:

- Expedia: "The servers related to wwww.expedia.com and its mobile application are in Chandler, AZ." (*Id*. at ¶ 8.)
- Hotels.com: "The servers related to wwww.hotels.com and its mobile

---

[1]   Concurrently with filing this opposition, IBM has filed its First Amended Complaint alleging the Defendants also infringe four additional IBM patents.

[2]   Exhibits are to the Declaration of Robert C. Harrits in Support of IBM's Opposition to Expedia's Motion to Transfer unless otherwise noted.

application are in Chandler, AZ." (*Id.* at ¶ 10.)

- <u>Orbitz</u>: "[T]he servers related to wwww.orbitz.com and its mobile application are in Chandler, AZ." (*Id.* at ¶ 13.)
- <u>Hotwire</u>: "[T]he servers related to wwww.hotwire.com and its mobile application are in Chandler, AZ." (*Id.* at ¶ 15.)

In short, the critical representation on which Expedia has premised its current motion to transfer—"[t]his action has no legitimate connections to the District of Arizona" (D.I. 26 at 1)—is, by Expedia's own prior sworn statements, demonstrably false.

Consistent with its admitted, substantial connections to Arizona, Expedia fails to meet its heavy burden of establishing that this action should be transferred from the District of Arizona—the common, logical venue in which all Defendants, including Expedia, maintain their infringing servers and data centers—to the Western District of Washington.  Expedia does even not dispute that this district has personal jurisdiction over it and provides a proper venue; the only issue is whether Expedia satisfies its burden of establishing that the District of Arizona is a clearly inconvenient venue for this case.  Expedia does not do so.  The relevant factors, including the significant ties to this district of both parties and the cause of action overwhelmingly disfavor transfer.  In addition, judicial economy stemming from the common venue available in this district likewise overwhelmingly disfavors transfer.

In short, this is not a case of "forum shopping."  Rather, IBM filed suit in this district because the Defendants represented in a sworn court filing that this was the relevant district.  Expedia should not be permitted to engage in serial venue gamesmanship, seeking to avoid venue in the District of Delaware by representing that its infringing servers are located in Arizona and then seeking to avoid venue in the District of Arizona by representing that "[t]his action has no legitimate connections to the District of Arizona."  (D.I. 26 at 1.)  Based on Expedia's prior sworn admissions and other evidence, the District of Arizona is not only a proper venue but the most logical and convenient venue for adjudication of this action, far more so than the Western District of Washington which may not even have jurisdiction over this entire action.  Accordingly, Expedia's motion to transfer should be denied.

## II. FACTUAL BACKGROUND

### A. IBM Is A Recognized Innovator With Ties To Arizona

IBM, founded in 1911, has long been a worldwide leader in technological innovation and development. IBM spends billions of dollars per year on research and development, which has led to great advances in the realm of science and technology. (D.I. 1 ¶¶ 17-19.) IBM's research facilities are located all over the world. IBM has multiple facilities in Arizona, including in Phoenix (2929 N Central Ave, Phoenix, AZ 85012) and Tucson (9000 S Rita Rd, Tucson, AZ 85744). (Exs. B-C.) From facilities such as these, IBM's employees engage in cutting-edge research, design, and commercialization of technologies such as web development, user interfaces, cloud computing, network security, and many others.

Rather than keep its research and technological innovations to itself, IBM discloses and protects many of them through the patent process. (D.I. 1 ¶¶18-20.) IBM routinely patents the inventions that stem from its research and development; over the past two decades, the United States Patent and Trademark Office has awarded more patents each year to IBM than to any other company. (*Id.* ¶ 18.) Moreover, IBM typically does not use its patents to exclude other companies from using IBM's patented technology, but instead prefers to seek mutually beneficial cross-licenses that allow others in the industry to use IBM's technology. (*Id.* ¶ 20.) Only when companies, such as Expedia, use IBM's technology without engaging in reasonable negotiations does IBM seek to enforce its patent rights. (*Id.* ¶ 21.)

### B. Expedia's Infringement Of IBM's Patents Has Substantial Ties To Arizona

Expedia was founded in 1996—nearly 90 years after IBM. (Ex. D.) Expedia provides online travel related services, such as booking flights, car rentals, and hotel stays, to customers through its website, www.expedia.com, and its associated mobile applications. (D.I. 1 ¶ 4.) Expedia conducts business and offers its infringing services in the District of Arizona. (D.I. 30 ¶ 36.) The services offered by Expedia's website and mobile application are made possible by Expedia servers that connect to and send information to customer's devices over the internet. (Ex. A ¶¶ 8, 10, 13-14; D.I. 30 ¶¶ 15, 47; D.I. 26, Ex. 1 ¶ 7.) These servers provide the code necessary to render and run the website and mobile applications. The servers also

store Expedia's "inventory"—the lists of available hotels, flights, cars, and cruises that customers can purchase. Expedia's servers are vital to Expedia's business model, and its products would not work without them. Much of Expedia's infringing activity is occurring on these very servers.

The infringing Expedia servers are located in *this district*—namely in Chandler, Arizona and Phoenix, Arizona—in spaces that Expedia has leased on a perpetual and continuing basis for many years at 2121 S. Price Rd. #011, Chandler, AZ 85286 ("Chandler Data Center") and 615 N 48th St., Phoenix AZ 85008 (Phoenix Data Center"). (D.I. 30 ¶¶ 15, 41, 46-47; Ex. A ¶ 8.) Because the infringing Expedia servers are located in this district, Expedia's infringing activity is occurring in this district. In addition, Expedia employs over 50 full-time employees in Arizona to manage and maintain those servers. (D.I. 30 ¶ 48; D.I. 26 Ex. ¶ 8.) Those individuals have the responsibility to oversee "all of the hardware inventory require to run the [Expedia] websites." (D.I. 1 ¶ 48.) Expedia also pays taxes in Arizona, including on the infringing servers that Expedia maintains in the district. (Exs. E-F.)[3,4] Consistent with its substantial ties to Arizona—including its infringing servers, physical locations, employees, and tax payments—even "Expedia does not contest that venue . . . is proper pursuant to 1400(b)" in this district. (D.I. 30 ¶ 36.)

### C. To Avoid Venue In The District Of Delaware, Expedia Previously Relied On Its Connections To Arizona, Including The Location Of Its Servers Here

Due to the Defendants' repeated and widespread infringement of IBM's patents, this is not the first patent infringement case that IBM has had to bring against them. In 2017, IBM

---

[3] Expedia likely chose to house its servers at data centers in Arizona due to the favorable treatment that Arizona accords data centers such as those leased by Expedia here. (Ex. G.)

[4] The Supreme Court of Arizona recently determined that Expedia and the other defendants "engage in the business of operating a hotel" in the District of Arizona. *City of Phoenix v. Orbitz Worldwide Inc.*, No. CV-18-0275-PR, 2019 WL 4256211, at *1, *4 (Ariz. Sept. 9, 2019) ("It would be illogical to conclude that the OTCs—which advertise available rooms, solicit potential customers, collect customers' information, process payments, confirm reservations, provide customer service, and facilitate reservation modifications and cancellations—are not actively engaged in 'the business of operating a hotel.' Indeed, all these services provided by the OTCs are central to keeping a hotel functional and in operation").

brought a patent infringement suit (concerning other IBM patents on internet-based technologies) against Expedia and the other Defendants in the District of Delaware. *See Int'l Bus. Machines Corp. v. Expedia, Inc.,* No. CV 17-1875-LPS-CJB (D. Del.) ("Delaware Litigation"); (*see* Delaware Litigation, D.I. 1, 27.) IBM brought that suit in Delaware because that is where the defendants in that case and/or entities related to them were incorporated.

Despite its Delaware contacts, however, Expedia moved to dismiss IBM's complaint in the Delaware Litigation under Federal Rule of Civil Procedure 12(b)(3) based on an assertion of improper venue. (Delaware Litigation, D.I. 31, 32.) In support of that motion, Expedia filed the sworn declaration of Michael Marron—Expedia's Senior Vice President, Legal and Assistant Secretary. To avoid venue in Delaware, Expedia's declaration expressly emphasized and relied on the ties of Expedia, Hotels.com, Orbitz, and Hotwire to Arizona:

> 8. Expedia-WA is an operating company. Its principal location, and the principal location for its operations, records, and employees, is Bellevue, WA. Expedia-WA owns and operates www.expedia.com and its mobile application, and a significant number of the employees responsible for that technology are in Bellevue. **The servers related to www.expedia.com and its mobile application are in Chandler, AZ.**
>
> 10. Hotels.com L.P. ("Hotels.com") is an operating company. Its principal location, and the principal location for its operations, records, and employees, is Dallas, TX. **The servers related to www.hotels.com and its mobile application are located in Chandler, AZ.** A significant number of the employees responsible for that technology are in Dallas, TX, London, UK, and Bellevue, WA. Hotels.com owns and operates www.hotels.com and its mobile application.
>
> 13. Orbitz, LLC ("Orbitz") is an operating company. Its principal location is Chicago, IL. Orbitz owns www.orbitz.com and its mobile application**, and the servers related to www.orbitz.com and its mobile application are located in Chandler, AZ.**
>
> 14. Hotwire, Inc. ("Hotwire") is an operating company. Its principal location, and the principal location for its operations, records, and employees, is San Francisco, CA. **The servers related to www.hotwire.com and its mobile application are located in Chandler, AZ.** A significant number of the employees responsible for that technology are in San Francisco, CA and Seattle, WA. Hotwire owns and operates www.hotwire.com and its mobile application.

(Ex. A ¶¶ 8, 10, 13-14 (emphasis added). As shown above, Expedia's declaration expressly relied on the fact that the servers responsible for running the accused websites and associated

mobile applications—the same servers pertinent to Defendants' infringement in this current case—were located in Arizona.[5]

### D. IBM Brought Suit Against Expedia In Arizona—The Venue Where Defendants' Infringing Servers Are Located, Where Their Infringement Is Occurring, And Where Defendants Represented Was Relevant.

In view of the Defendants' infringement of additional IBM patents, IBM brought this instant suit against Expedia, Hotels.com, Orbitz, and Hotwire on April 9, 2019. (D.I. 1.) IBM alleged infringement by the Defendants' websites (i.e., www.expedia.com, www.hotels.com, www.orbitz.com, and www.hotwire.com) and their associated mobile applications. (*Id.*) Because these are the same instrumentalities on which Mr. Marron based his sworn declaration filed in the District of Delaware, and Mr. Marron had represented that all four Defendants had relevant ties to Arizona because those servers were instead located in Arizona, IBM filed suit in the District of Arizona as the common, logical venue for its infringement allegations against the Defendants. In other words, IBM filed suit in this district because the Defendants had told IBM and the Delaware District Court that *this* was the relevant district.

Consistent with this history, IBM's complaint pled numerous facts tying Expedia and the other Defendants to the District of Arizona. (D.I. 1 ¶¶ 4-15, 34-66.) Despite Expedia's well-documented ties to this district, sworn representations to the Delaware District Court that the infringing servers are located in Arizona, and Expedia's own admission in its Answer that "Expedia does not contest that venue . . . is proper pursuant to 1400(b)" in this district (D.I. 30 ¶ 36), Expedia now rests its motion to transfer on the demonstrably false claim "[t]his action has no legitimate connections to the District of Arizona." (D.I. 26 at 1.)

---

[5] The Delaware court denied Expedia's motion to dismiss without prejudice, allowing IBM to pursue venue discovery in connection with fact discovery. (Delaware Litigation, D.I. 160.) Discovery has been progressing in the Delaware case with fact discovery expected to close on November 1, 2019. (Delaware Litigation, D.I. 60.) In response to discovery requests in the Delaware litigation, Expedia has produced numerous documents to IBM's counsel in New York as well as made large amounts of source code available at its outside counsel's New York office: Baker Botts, 30 Rockefeller Plaza, New York, New York 10112-4498, not the Western District of Washington. (Exs. H-J.) Baker Botts is representing Expedia in both the Delaware litigation and the Arizona litigation.

## III. LEGAL STANDARD

"The party moving for transfer bears a heavy burden to show by 'particular circumstances that the transferor forum was inappropriate.'" *Shipley v. Pesavento*, No. CV 03-621 TUC JMR, 2006 WL 8440671, at *1 (D. Ariz. Feb. 23, 2006) (citing *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)). To prevail on a motion to transfer, the "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). In determining whether to transfer a case, the Ninth Circuit (whose law governs this procedural issue) evaluates a list of non-exclusive factors:

> (1) the location where relevant agreements were negotiated and executed, (2) the state most familiar with governing law, (3) the plaintiff's choice of forum, (4) the parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action, (6) differences in cost to litigate in each forum, (7) the availability of compulsory process to compel witness attendance, and (8) the ease of access to sources of proof."

*OptoLum, Inc. v. Cree, Inc.*, 244 F. Supp. 3d 1005, 1009 (D. Ariz. 2017) (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000)).

"There is ordinarily a strong presumption in favor of the plaintiff's choice of forum, such that great weight and substantial deference is generally afforded to a plaintiff's choice." *Hisun Motors Corp., U.S.A. v. Auto. Testing & Dev. Servs., Inc.*, No. CV11-1918-PHX DGC, 2011 WL 5290149, at *2 (D. Ariz. Nov. 1, 2011) (internal quotations omitted); *see Tuazon v. R.J. Reynolds Tobacco, Co.*, 433 F.3d 1163, 1180 (9th Cir. 2006) ("[A] plaintiff need not select the optimal forum for his claim, but only a forum that is not so oppressive and vexatious to the defendant as to be out of proportion to plaintiff's convenience."). "This is especially true where the forum plaintiff chose . . . has a significant connection with the subject matter of the case." *Managed Protected Servs., Inc. v. CREDO Petroleum Corp.*, No. CV-12-00080-PHX-GMS, 2012 WL 3264515, at *2 (D. Ariz. Aug. 9, 2012). Further, when evaluating the factor related to the parties' "contacts with the forum," courts look to parties' general overall contacts with the forum—"not whether those contacts are unique or whether the parties have contacts with other forums." *In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1080 (S.D. Cal. 2011).

"The three factors related to inconvenience" (i.e., factors 6-8) typically receive less weight "because "modern transportation and communication have made it much less burdensome for a party sued to defend itself outside its home state." *Renfrow v. BDP Innovative Chemicals Co.*, No. CV-14-01183-PHX-GMS, 2014 WL 7146792, at *5 (D. Ariz. Dec. 15, 2014) (citing *Patent Rights Protection Grp., LLC v. Video Gaming Techs., Inc.,* 603 F.3d 1364, 1370 (Fed.Cir.2010) (internal quotations omitted)). And similarly, "[g]iven today's available technology, the location of documentary evidence is entitled to less weight. . . [unless there is a] specific claim regarding the inconvenience of transporting documents." *Talley v. Pembrooke Occupational Health, Inc.*, No. CV-08-2165-PHX-FJM, 2009 WL 899701, at *2 (D. Ariz. Mar. 27, 2009). Likewise, the location of a parties' witnesses typically does not merit significant weight because a "[d]efendant could require its employee-witnesses to travel to Arizona for trial." *Khedouri v. Shell Holdings, Inc.*, No. CV-09-315-PHX-DGC, 2009 WL 981982, at *2 (D. Ariz. Apr. 13, 2009). To the extent a court is going to even consider a transfer for the convenience of witnesses, the "moving party must identify relevant witnesses, state their location and describe their testimony and its relevance." *Club Vista Fin. Servs., LLC v. Maslon Edelman Borman & Brand, LLP*, No. CV 10-0412-PHX-GMS, 2010 WL 2231926, at *8 (D. Ariz. June 2, 2010).

Accordingly, courts in this district routinely deny motions to transfer venue. *See, e.g., OptoLum, Inc.*, 244 F. Supp. 3d at 1008–09; *Anspach v. Meyer*, No. CV-13-01877-PHX-DGC, 2014 WL 345676, at *9 (D. Ariz. Jan. 30, 2014); *Fed. Trade Comm'n v. Elec. Payment Sols. of Am. Inc.*, No. CV-17-02535-PHX-DJH, 2018 WL 3648409, at *6 (D. Ariz. Aug. 1, 2018).

## IV.  ARGUMENT

The Court should deny Expedia's motion to transfer venue. Expedia does not dispute that the District of Arizona has personal jurisdiction over it and provides a proper venue. Instead, Expedia seeks to transfer venue from this admittedly proper district to a different, Expedia-favored district simply due to Expedia's highly-disputed allegations of purported convenience. But Expedia has not met its heavy burden of showing that the Western District of Washington is a more convenient forum for this action than the District of Arizona—the

district where Expedia's infringing servers actually reside and to which Expedia previously has pointed to avoid venue in other districts. To the contrary, the relevant factors overwhelmingly weigh against transfer and do not warrant disturbing IBM's choice of forum.

   **A. IBM's Choice Of The District Of Arizona As The Common Forum For This Case Should Be Given Significant Weight Because IBM's Cause Of Action Is Directly Tied To This District**

  IBM's choice of forum strongly compels denying Expedia's motion to transfer. "A court should not lightly disturb a plaintiff's choice of forum. This is especially true where the forum plaintiff chose . . . has a significant connection with the subject matter of the case." *Managed Protected Servs.*, 2012 WL 3264515, at *2 (D. Ariz. Aug. 9, 2012).

  Here, the District of Arizona has a strong connection to this case. IBM chose Arizona as the common forum to pursue its common claims against Expedia and the other Defendants because they had represented under oath in a sworn, court-filed declaration that each of them had relevant ties to Arizona, including because the servers that run the accused website and mobile applications (i.e., the infringing servers) are located in Arizona:

> 8. Expedia-WA is an operating company. Its principal location, and the principal location for its operations, records, and employees, is Bellevue, WA. Expedia-WA owns and operates www.expedia.com and its mobile application, and a significant number of the employees responsible for that technology are in Bellevue. ==The servers related to www.expedia.com and its mobile application are in Chandler, AZ.==
>
> 10. Hotels.com L.P. ("Hotels.com") is an operating company. Its principal location, and the principal location for its operations, records, and employees, is Dallas, TX. ==The servers related to www.hotels.com and its mobile application are located in Chandler, AZ.== A significant number of the employees responsible for that technology are in Dallas, TX, London, UK, and Bellevue, WA. Hotels.com owns and operates www.hotels.com and its mobile application.
>
> 13. Orbitz, LLC ("Orbitz") is an operating company. Its principal location is Chicago, IL. Orbitz owns www.orbitz.com and its mobile application==, and the servers related to www.orbitz.com and its mobile application are located in Chandler, AZ.==
>
> 14. Hotwire, Inc. ("Hotwire") is an operating company. Its principal location, and the principal location for its operations, records, and employees, is San Francisco, CA. ==The servers related to www.hotwire.com and its mobile application are located in Chandler, AZ.== A significant number of the employees responsible for that technology are in San Francisco, CA and Seattle, WA. Hotwire owns and operates www.hotwire.com and its mobile application.

(Ex. A ¶ 8, 10, 13-14 (emphasis added); see also D.I. 30 ¶ 47.) Because the accused functionalities directly tie to these servers, the infringing activities of Expedia (as well as the

other Defendants) occur in and arise directly out of the District of Arizona. (E.g., D.I. 1 ¶ 72 (describing infringement of the '440 patent by Expedia's servers).)

This case is not analogous to *In re HP Inc.*, No. 2018-149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018), as Expedia inaccurately alleges. (D.I. 26 at 13-15.) First, unlike Expedia, the defendant in *HP* had not alleged that the servers running the accused products were located and operated in the district, let alone provided sworn statements to a court admitting those facts. (*Compare In re HP Inc.*, 2018 WL 4692486, *with* Ex. A.) Second, unlike the defendant in *HP*, Expedia has not identified any specific witnesses who would testify about the accused products. *Compare In re HP Inc.*, 2018 WL 4692486 at *2-3 (specifically identifying witnesses), *with* (D.I. 26, Ex. 1 (not identifying any specific witnesses).) Third, unlike in the Fifth Circuit, which forbids the consideration of plaintiff's choice of venue in the transfer analysis,[6] courts in the Ninth Circuit are explicitly directed to consider a plaintiff's choice. *See Jones*, 211 F.3d at 498.

In short, IBM's choice of forum is directly related to its cause of action and thus should be afforded substantial deference, which strongly weighs against transfer.

**B.     IBM And Expedia Have Significant Contacts With The District, Which Weigh Against Transfer.**

IBM and Expedia's significant contacts with this district likewise strongly weigh against transfer. When evaluating the parties' "contacts with the forum," courts look to parties' overall general contacts with the forum—"not whether those contacts are unique or whether the parties have contacts with other forums." *In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1080 (S.D. Cal. 2011).

Here, both IBM and Expedia have significant contacts with Arizona. IBM has multiple facilities in this district, including a facility in Phoenix (2929 N. Central Ave) and a facility in

---

[6] *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) ("Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis.").

Tucson (9000 S. Rita Rd.) which have a significant number of employees. (Ex. B-C.) Additionally, IBM has paid taxes on its Phoenix location. (Ex. B.)

Expedia similarly operates multiple facilities in this district, including data centers in Phoenix (15 N 48th St., Phoenix AZ 85008) and Chandler (2121 S. Price Rd. #011, Chandler, AZ 85286) ***where Expedia maintains the infringing servers themselves***. (D.I. 30 ¶¶ 41, 46-47; Ex. A ¶¶ 8, 10, 13-14.) Expedia has over 50 employees at its Phoenix and Chandler data centers. (D.I. 30 ¶ 48; D.I. 26 Ex. 1 ¶ 8.) In addition, Expedia also has a registered agent for the service of process, National Registered Agents, Inc., in Phoenix (3800 N. Central Avenue). (D.I. 30 at ¶ 4.) Furthermore, Expedia admits that it conducts business in Arizona by offering for sales products and services that are accessible in Arizona. (D.I. 30 at ¶ 36.) To that end, the Supreme Court of Arizona recently determined that Expedia was "engaged in 'the business of operating a hotel'" in Arizona. *City of Phoenix*, 2019 WL 4256211 at *4. Expedia also pays taxes to Arizona on the servers that it carries out its infringement activities. (Exs. E-F.) Unsurprisingly, in view of its significant contacts with Arizona, even "Expedia does not contest that venue . . . is proper pursuant to 1400(b)" in this district. (D.I. 30 ¶ 36.)

IBM's and Expedia's significant contacts with the District of Arizona further weigh against transfer.

**C.  The Ease Of Access To Sources Of Proof Is At Most Neutral And Does Not Support Venue Transfer.**

The relative ease of access to sources of proof in this case is at most a neutral factor and, if anything, would support keeping venue in the District of Arizona.

As an initial matter, Expedia's allegation that "all [of] the allegedly infringing activity, related source code, and other documentary evidence is developed in Washington" is inaccurate. (D.I. 26 at 10.) As discussed above, Expedia's infringing servers are relevant sources of proof that are located in Arizona at Expedia's data centers in Chandler and Phoenix. (Ex. A ¶¶ 8, 10, 13-14; D.I. 30 ¶¶ 15, 47; D.I. 26, Ex. 1 ¶ 7.) Indeed, at least two of the patents-in-suit—the '440 patent from IBM's Initial Complaint and the '265 patent from IBM's Amended Complaint—directly implicate the functioning of Expedia's servers and the specific

communications they have with customers' devices. (*See* D.I. 1 ¶ 72; Amended Complaint ¶ 291.) Because Expedia's infringing servers are located in Arizona, maintenance of this action in this district would facilitate ease of access to the infringing servers.

Moreover, Expedia does not and cannot claim that it would face any difficulty producing its documents in Arizona. (D.I. 26 at 9-10). Courts in this district have found that "[g]iven today's available technology, the location of documentary evidence is entitled to less weight . . . [particularly] [w]ithout any specific claim regarding the inconvenience of transporting documents." *Talley v. Pembrooke Occupational Health, Inc.*, No. CV-08-2165-PHX-FJM, 2009 WL 899701, at *2 (D. Ariz. Mar. 27, 2009). And as part of the Delaware Litigation, Expedia produced over 650,000 documents and the source code describing the operation of its website and mobile applications, totaling several terabytes, to IBM's counsel in New York City. (Exs. I-J.) Therefore, Expedia has already produced its alleged "sources of proof" in locations outside of the Western District of Washington.

At least for these reasons, this factor is at best neutral and does not support transferring this case to the Western District of Washington.

### D. Expedia Has Not Met Its Burden Of Establishing That The Convenience Of Witnesses Favor Transfer

Expedia has failed to carry its burden that the case should be transferred to the Western District of Washington due to the purported convenience of any witness. "If the [requested] transfer is for the convenience of witnesses, [the] defendant must name the witnesses it wishes to call, the anticipated area of their testimony and its relevance, and the reasons why the present forum would present hardship to them." *Fekrat v. United States*, No. CV1300594MMMPJWX, 2013 WL 12131739, at *4 (C.D. Cal. May 6, 2013); *Carranza-Contreras v. Ally Fin. Inc.*, No. CV-18-00441-TUC-CKJ, 2019 WL 3766984, at *3 (D. Ariz. Aug. 9, 2019) (denying motion to transfer where Defendant did not provided detailed information about the alleged witnesses).

Here, Expedia's allegations of witness convenience rest on boilerplate, unsupported attorney assertions about unspecified witnesses rather than the required specific identification

of particular witnesses, anticipated testimony and relevance, and any hardship to any such witness from a proceeding in Arizona.  Indeed, although Expedia bears the burden of proof on the issue of transfer, Expedia's opening brief failed to identify any witness located in the transferee forum that had any information relevant to IBM's cause of action in the first place. (*See* D.I. 26 at 5, 9; D.I. 26, Ex. 1.)  Expedia's allegations ring particularly hollow because Expedia has already disclosed numerous people in the Delaware Litigation who reside outside of the Western District of Washington.  (*Compare* K (Expedia's Initial Disclosures) with Exs. L-Q (LinkedIn Profiles indicating employee locations outside of the Western District of Washington).)  Because Expedia failed to specifically identify any particular trial witness, testimony/relevance, and hardship, the Court should accord little or no weight to Expedia's argument regarding the purported locations of Expedia's unspecified witnesses.  *Fekrat*, 2013 WL 12131739, at *4 (C.D. Cal. May 6, 2013) ("The court, therefore, accords little weight to the location of party employees, and finds that defendants have failed to show that the [transferee forum] would be a more convenient forum.").[7,8]

### E. There Will Be Little Cost Difference Between Litigating This Case In The District Of Arizona Compared To The Western District Of Washington.

Expedia does not establish that there will be any, let alone a meaningful, cost difference between litigating this case in the District of Arizona as compared to the Western District of Washington.  Expedia alleges that its costs will be significant if it has to go to trial in Arizona because much of the relevant evidence is allegedly in Washington. (D.I. 26 at 10.)  As discussed above, however, Expedia's infringing servers are relevant evidence located in

---

[7] The Court should not credit any witnesses Expedia may identify in their reply. *Managed Protected Servs., Inc.*, 2012 WL 3264515, at *3 (D. Ariz. Aug. 9, 2012) (declining to consider witness raised in a defendants' reply because "[a]rguments raised for the first time in [the] reply brief are deemed waived.") (citing *Delgadillo v. Woodford,* 527 F.3d 919, 930 n. 4 (9th Cir. 2008)).

[8] Even if the Court were to credit Expedia's alleged disclosure of all of its unspecified employees in the Western District of Washington, the Court should afford this factor little weight.  Where a "[d]efendant could require its employee-witnesses to travel to Arizona for trial. . . transfer [is] only slightly [] favor[ed]. *Khedouri*, 2009 WL 981982 at *2.

Arizona, and Expedia has already produced much of the documents and source code in New York—over 2,000 miles away from Washington. "Moreover, given the growth of electronic communication and document production, discovery costs should be about the same in either forum." *OptoLum, Inc.*, 244 F. Supp. at 1009 (internal quotations omitted). Additionally, as discussed above, Expedia's opening brief failed to identify any specific trial witness in Washington.

In addition, the District of Arizona has instituted polices designed to decrease the cost of litigation. For example, Arizona is participating in the Mandatory Initial Discovery Pilot Project, whose goal is to "reduce the cost and delay of civil litigation." *See* Mandatory Initial Discovery Pilot Project: Overview (*available at* https://www.fjc.gov/content/321837/mandatory-initial-discovery-pilot-project-overview). Furthermore, before trial, the parties' costs will be greater to litigate this case in Washington than Arizona. Expedia's and IBM's chosen lead counsel do not have offices located in either Arizona or Washington and therefore will be forced to incur costs associated with attending hearings regardless of where this case proceeds. The General Services Administration, which administers per diem rates for government employees, indicates that the cost of staying in Seattle, Washington, is significantly higher than in Phoenix, Arizona. (*Compare* Ex. R *with* Ex. S.) Thus, Expedia fails to establish that this factor favors transfer.

**F.    Both Arizona and Washington Are Equally Familiar With The Law**

Both Arizona and Washington would be equally familiar with the relevant law, making this factor neutral. "[P]atent law claims asserted by [Plaintiff] would be equally familiar to district courts in both Arizona and" Washington. *OptoLum, Inc.*, 244 F. Supp. 3d 1005 at 1009. Expedia alleges that Washington has a greater familiarity with patent law because it has "Local Supplemental Patent Rules." (D.I. 26 at 12.) But Expedia ignores the fact that district court judges in the District of Arizona have patent scheduling orders that cover much of the same material as the Washington Supplemental Patent Rules. *See* Judge Douglas L. Rayes' Case Management Order – Patent Infringement Case (*available at* http://www.azd.uscourts.gov/sites/default/files/judge-orders/DLR%20Scheduling%20Order-

14

Patent%20w%20Markman%20Hearing%20-%20After%2005 0117.pdf). Expedia fails to show any differences in familiarity with the law between the District of Arizona and the Western District of Washington that would warrant transfer. This factor is neutral.[9],[10]

### G. Judicial Economy From Resolving IBM's Claims Against The Four Defendants In The Common Venue Provided By The District Of Arizona Strongly Weighs Against Transfer.

While the private interest factors above strongly weigh against transfer, the important public interest factor of judicial economy confirms that this action should proceed in the District of Arizona. As discussed above, the District of Arizona is the common venue for IBM's claims for patent infringement against the four related Defendants—Expedia and its wholly-owned (direct or indirect) subsidiaries Hotels.com, Hotwire, and Orbitz. IBM's patent infringement claims against the four Defendants raise common questions of law and fact and may also give rise to joint and several liability at least because they assert the same patents and implicate infringing systems and technologies common to the Defendants. In a sworn, court-filed declaration, Expedia itself expressly admitted and relied on the fact that the servers responsible for running the accused websites (i.e., www.expedia.com, www.hotels.com, www.orbitz.com, and www.hotwire.com) and associated mobile applications were located in Arizona. (Ex. A ¶¶ 8, 10, 13-14.)

---

[9] Expedia's allegations regarding the number of cases pending in the District of Arizona and the Western District of Washington (D.I. 26 at 11-12) fails to acknowledge that, due to judicial vacancies, the District of Arizona currently has 11 active judges whereas the Western District of Washington has only three active judges. Ex. T (listing three active judges in the Western District of Washington) Ex. U (listing 11 active judges in the District of Arizona); Ex. V (listing 4 judicial vacancies in the Western District of Washington and only 2 in the District of Arizona).

[10] Expedia argues that the Western District of Washington has a greater interest in resolving the matter because "when an incident takes place within a judicial district, courts often find there is public interest in hearing the case locally." (D.I. 26 at 11 (citing *Berry v. Potter*, No. CIV 04-2922 PHX RCB, 2006 WL 335841, at *4 (D. Ariz. Feb. 10, 2006).) Expedia, however, ignores the fact that infringement is specifically occurring in the District of Arizona based on the presence of Expedia's servers. Furthermore, Arizona has specifically passed tax incentives designed to bring the types of data centers that house the infringing servers to Arizona. (Ex. G.) Thus, Arizona would have an equal, if not greater, interest in adjudicating the matter.

The Federal Circuit has held that "the existence of multiple lawsuits involving the same issues 'is a paramount consideration when determining whether a transfer is in the interest of justice.'" *In re Vicor Corp.*, 493 F. App'x 59, 61 (Fed. Cir. 2012) (citing *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009)). The Federal Circuit has recognized this reality even when the "two related cases before the same court may not involve the same defendants and accused products." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010). Here, even stronger reasons exist to keep the four Defendants together in the same case— including because they are closely related; are accused of infringing the same patents; and rely on the same servers, datacenters, and cloud infrastructure to run their accused products. (*See* D.I. 26, Ex. 1 ¶¶ 7, 9-11; Ex. A ¶¶ 8, 10, 13-14.) As a result, the District of Arizona presents a common, logical venue for adjudication of this dispute and adjudication here would significantly facilitate the public interest objective of judicial economy. Judicial economy stemming from the common venue available in this district strongly weighs against transfer.[11]

### H. IBM Did Not Engage In "Forum Shopping"

Finally, Expedia's allegation that IBM engaged in "forum shopping" is baseless. Rather, IBM filed suit in this district for its common claims against the Defendants because the Defendants admitted having relevant ties to this common forum and had represented in a sworn, court filing that this was the relevant district. In IBM's prior patent infringement case against Expedia and its pertinent parent and subsidiaries in the District of Delaware, Expedia

---

[11] Indeed, Expedia's motion to transfer seems designed precisely to obtain a litigation advantage by creating judicial *in*efficiency. The other Defendants (Hotels.com, Orbitz, and Hotwire) have direct ties to the District of Arizona including by maintaining the infringing servers here (Ex. A ¶¶ 8, 10, 13-14; D.I. 30 ¶¶ 15, 47; D.I. 26, Ex. 1 ¶ 7), but may lack such connections to the Western District of Washington. Indeed, the motion to dismiss filed by the other Defendants admits that they are not incorporated in the state of Washington and fails to point to any physical address in Washington that might qualify as a regular and established place of business. (*See* D.I. 27 at 15, D.I. 27, Ex. 1.) In short, Expedia seeks to transfer the case against it to a forum which may not have jurisdiction or venue over all defendants and thus the entire action. As a result, transfer of this case from the common venue that exists in the District of Arizona may require IBM to file four separate lawsuits—one against each of the Defendants—in different courts regarding the same patents and accused technologies, which would be wasteful and duplicative.

moved to dismiss IBM's complaint based on an assertion of improper venue. To avoid venue in the District of Delaware, Expedia instead pointed to and relied on Arizona as the place where Expedia, Hotels.com, Orbitz, and Hotwire have relevant ties, including based on the presence of the accused websites and mobile applications in Arizona. (Ex. A ¶¶ 8, 10, 13-14.) As a result, IBM subsequently filed this patent case against Expedia, Hotels.com, Orbitz, and Hotwire in the District of Arizona because it is the venue that Expedia itself pointed to and is where each of the Defendants are carrying out their infringing activities on their infringing servers. In short, IBM brought suit in the District of Arizona because it provides a common, logical venue to redress IBM's common claims that the four related Defendants infringe the same patents based on accused systems and technologies common to each of them.

Expedia should not be permitted to engage in serial venue gamesmanship, seeking to avoid venue in the District of Delaware by representing that its infringing servers are located in Arizona and then seeking to avoid venue in the District of Arizona by representing that "[t]his action has no legitimate connections to the District of Arizona." (D.I. 26 at 1.) Based on Expedia's prior sworn admissions and other evidence, the District of Arizona—the very place where each of the Defendants maintain their infringing servers—is not only a proper venue but the most logical and convenient venue for adjudication of this action.

## V.    CONCLUSION

Expedia has not met its heavy burden of establishing that the District of Arizona is inconvenient as to warrant transferring this case to the Western District of Washington. To the contrary, Expedia has expressly admitted that the Defendants in this action have relevant ties to the District of Arizona, and thus this district represents a common, logical venue for this action that comports with the parties' private interests and furthers the public interest of judicial economy. Accordingly, the Court should deny Expedia's motion to transfer.

Dated: September 18, 2019

                        OSBORN MALEDON, P.A.

                By  s/  Brett L. Dunkelman
                    Brett L. Dunkelman
                    Eric M. Fraser
                    2929 N. Central Avenue, Suite 2100
                    Phoenix, Arizona  85012-2793

                    Karim Z. Oussayef
                    Robert C. Harrits
                    Desmarais LLP
                    230 Park Avenue
                    New York, NY  10169

                    Attorneys for Plaintiff
                    International Business Machines Corporation

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 18, 2019, the attached document was electronically transmitted to the Clerk of the Court using the CM/ECF System which will send notification of such filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

                    s/  Debra Huss